GEORGE A. RAFTERY, Respondent, *v.* WORLD FILM CORPORATION, Appellant.

First Department, December 21, 1917.

Contract — license to exhibit motion picture films on payment of portion of profits — suit in equity to compel accounting and return of motion picture films — necessity for rescission of contract obviated by expiration thereof — right to rescind contract for breach of condition subsequent — power of equity to compel return of chattel where damages may arise from wrongful use thereof — equity having obtained jurisdiction will give full relief.

Where a contract respecting the exhibition by the defendant of moving picture films manufactured by the plaintiff's assignor, provided that the films were to remain the property of the assignor and were to be returned by the defendant at the expiration of the contract and provided that the defendant, after deducting from its receipts certain sums advanced to the assignor, should pay to the assignor fifty per cent of the gross

First Department,° December, 1917.    [Vol. 180.

receipts from the exhibition of the film, and further bound the defendant to make weekly accountings of receipts, the plaintiff in order to maintain a suit for an accounting and for a return of the films need not rescind the contract where, at the time of the trial of the action, the contract had expired by reason of the time limited therein contained.

As the necessity for rescission has passed the plaintiff's remedy must be upon the contract.

But where, at the time the suit was brought, the plaintiff asked a rescission of the contract by reason of the fact that the defendant had failed to pay the assignor one-half of the gross receipts and had rendered false and fraudulent accounts, a court of equity will not dismiss the complaint because, owing to the expiration of the contract by the time limit, the plaintiff at the time of the trial proceeds in affirmance of the contract rather than for the rescission originally demanded.

Under the law of this State a party to a contract may rescind the same for a breach of a condition subsequent, but the breach must be fundamental if it were not willful. If willful, a breach in any of the material stipulations is a ground for rescission.

The defendant's failure to pay the percentage of profits agreed upon and its rendering of false and fraudulent accounts was a breach of a material stipulation which justifies a rescission of the contract.

The plaintiff is entitled to equitable relief compelling the defendant to return the films as agreed and is not limited to legal damages for the value of the films, as the plaintiff's damage is not represented solely by the cost of the films but also by the possible wrongful production of said films by persons without authority to do so.

As the plaintiff was entitled to equitable relief when the suit was brought, the court will not dismiss the complaint because before trial the contract had expired so that rescission became unnecessary, for equity, having obtained jurisdiction, retains the same even though at the time of judgment there may be an adequate remedy at law.

Moreover, the court of equity, retaining jurisdiction, will compel the defendant to account.

APPEAL by the defendant, World Film Corporation, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 20th day of April, 1917, directing an accounting and a return to the plaintiff of twenty-six films of a motion picture known as " The Head Hunters," upon the decision of the court after a trial at the New York Special Term.

*I. Maurice Wormser* of counsel [*Nathan Vidaver*, attorney], for the appellant.

*Hector M. Hitchings* of counsel [*J. Elmer Melick* with him on the brief], *Hitchings & Burdick*, attorneys, for the respondent.

SMITH, J.:

Upon February 13, 1915, the Seattle Film Co., Inc., the plaintiff's assignor, entered into a contract with the World Film Corporation, the defendant in this action, called in the contract the distributor. The general provisions of the contract were that the defendant, the distributor, should distribute and have produced the motion pictures representing " The Head Hunters " in the various theatres controlled by the defendant, which were twenty-six in number. The film was the property of the plaintiff's assignor. Under the contract twenty-six positive prints, so called, were delivered to the defendant for the purpose of the production, upon the express covenant of the defendant to return these prints to the producer at the expiration of the contract. There were other provisions in the contract as to the cost of making these prints, which cost was advanced by the distributor to the producer, and for which the distributor was to reimburse itself from the first proceeds which it might obtain from the production. Also there were one or two other minor disbursements which the distributor was allowed to deduct from the proceeds of the production before dividing the moneys with the producer, which division was to be made after the payment of these sums, the producer to receive fifty per cent of the gross proceeds. It was further provided that the distributor should upon Tuesday of each week pay to the producer the said fifty per cent of the gross cash receipts over and above the amount so provided to be retained during the week ending nine days prior to the date of payment, and at the time of each payment to the producer the distributor was to submit to the producer a statement showing such gross receipts and the producer should have the privilege once a month at a reasonable time, to inspect the accounts of the distributor relative to such gross cash receipts. The trial court has found that the distributor did not turn over to the producer one-half of the gross receipts as required by the contract, did not render to the said company just, true and accurate statements of the rentals received, but on the contrary, it rendered the said Seattle Company, the producer, week by week, false, untrue and fraudulent statements of the rentals received by it and of the leases by it and of the expenses

incurred by it; that it kept false, fraudulent and fictitious books of account and turned over to the producer only a small amount of receipts, representing that they were true and correct amounts, and it neglected and refused, upon demand properly made, to allow an inspection of the books and returns, to verify the statements rendered by it. The trial court has further found that the defendant has retained possession of and still has the twenty-six sets of films or positive prints of said production known as "The Head Hunters," although the defendant by the 8th clause of the aforesaid contract of February 13, 1915, contracted and agreed to return the said prints upon the termination of the contract, which occurred on the 15th day of August, 1916, and that Britton N. Busch, defendant's secretary and treasurer, has testified that he does not now know where one of said films is and one of same has been publicly exhibited in the west by a complete stranger to the contract.

The defendant offered no evidence on its own behalf, and now stands upon the specific objection that the plaintiff at no time had, and does not now have, any right to ask the interposition of a court of equity, and for that reason insists that the complaint should have been dismissed in accordance with its motion made at the trial. There are, I think, two questions of law involved: *First,* was the defendant's offense in giving false statements of its receipts and refusing to allow the plaintiff to examine its books to verify the statements given sufficiently grave to authorize the plaintiff at the time the action was brought to rescind the contract; *secondly,* assuming that the right of rescission then existed, had the plaintiff an adequate remedy at law? Preliminary to a discussion of these questions, it is well to note that at the time of the trial of this action the contract had expired by reason of its own terms, so that there was then no necessity for a rescission. The counsel for the respondent plainly asserts in his brief that his action is upon the contract. Inasmuch as the necessity for rescission is past, the plaintiff's remedy must of necessity be now upon the contract, and plaintiff's attorney could take no other position. It does not mean, however, that at the time the action was brought his position was in affirmance of the contract. He was then distinctly

claiming the contract's violation and asking the court to rescind it. But by a familiar rule in equity, if the plaintiff had a cause of action in equity when the action was commenced, the court will not dismiss the complaint although the situation has changed when the action is in fact brought to trial, but will give to the plaintiff any relief to which he may then be entitled.

*First.* The Seattle Film Company was at the time this action was commenced authorized to rescind the contract by the defendant's willful and fraudulent breach of the contract in failing to make true reports of the proceeds of the production and refusing the plaintiff an opportunity to inspect the books of the company. The authorities in this State bearing upon the right of a party to a contract to rescind for breach of the contract in a condition subsequent are not plentiful, as it does not appear that the question has many times arisen. The rule in England has been ultra strict in holding that the breach of the contract in a condition subsequent must amount practically to a repudiation or an abandonment of the contract in order to authorize a rescission. Professor Williston, one of the most eminent authorities in this country upon the law of contracts, has an article in 14 Harvard Law Review (pp. 318 *et seq.*), in which this question is discussed, in which it is shown that the law as applied in the United States is materially different from that as applied in England. In speaking of the English rule as stated, Professor Williston says: " This doctrine, though perhaps it is that of the English law to-day, must be regarded as erroneous in principle and unfortunate in practice. It seems to be based in large part on the notion that, in order to justify such a rescission of the contract, mutual assent of the parties must be established — an offer by the party in default accepted by the other party. In almost any case this can be established only by resorting to the baldest fiction."

Professor Williston in speaking of the American rule then says: " In truth rescission is imposed *in invitum* by the law at the option of the injured party, and it should be, and in general is, allowed not only for repudiation or total inability but also for any breach of contract of so material and substantial a nature as should constitute a defense to an action brought by the party in default for a refusal to proceed with the contract."

To this proposition many cases are cited in the United States court and in many States of the Union. The leading authority in New York State is the case of *Callanan* v. *K., A. C. & L. C. R. R. Co.* (199 N. Y. 269). That was a case brought in equity to rescind a contract for breach of a condition subsequent. Judge VANN, writing for the court, in speaking of the holding of the referee, said: "He rendered judgment rescinding the contract on the theory that it had been continuously violated in all essential particulars by Powers and Mansfield and that they had repudiated from the outset a binding part thereof. He had power to decree rescission on either of these grounds without finding fraud. While the complaint alleged both fraud in making the contract and a continuous breach and repudiation thereof as the grounds upon which it should be rescinded, the referee rejected the allegations of fraud and proceeded to judgment upon the allegations of breach and repudiation. Rescission was the object of the action, and the plaintiff had the right to allege as many grounds for rescission as he saw fit. He could allege in the same complaint fraud in entering into the contract as one ground for rescission, the continuous and substantial breach of the contract as another ground, and *the repudiation of a material stipulation as a third ground.*"

Further, the learned judge said: "We think the facts found expressly, without aid from implication, support the judgment, and that the evidence supports the findings. There is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case. It is permitted for failure of consideration, fraud in making the contract, for inability to perform it after it is made, *for repudiation of the contract or an essential part thereof* and for such a breach as substantially defeats its purpose. It is not permitted for a slight, casual or technical breach, but, as a general rule, only *for such as are material and wilful*, or, if not wilful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract. Failure to perform in every respect is not essential, but a failure which leaves the subject of the contract substantially different from what was contracted for is sufficient."

Within the strict letter of the rule thus laid down the

plaintiff has, in my judgment, shown a right of rescission. The consideration of the contract was the payment of fifty per cent of the gross proceeds after certain deductions. Inasmuch as the defendant was giving the production through its different agencies, the amount of those proceeds were known only to the defendant. It was, therefore, deemed necessary to stipulate that the defendant should make weekly reports of the gross receipts, and should allow the plaintiff access to its books that their accuracy might be tested. The giving of false and untrue reports of the proceeds and the refusal of the defendant to allow the plaintiff access to its books as stipulated, were clearly " material and wilful " breaches and " repudiation of the contract or an essential part thereof," and also such breaches " as substantially defeats its purpose." It would seem from this authority that the breach must be fundamental if it be not willful, but if willful, then a breach in any material stipulation constitutes ground for rescission. That the breach must be of a material provision is undoubted, but that false reports upon which payments are made under the contract and a refusal to allow a verification of those reports constitute a breach of a material stipulation in the contract, is too plain for controversy. (See, also, *Norrington* v. *Wright*, 115 U. S. 188, 204, 205; *Kokomo Strawboard Co.* v. *Inman*, 134 N. Y. 92.)

*Second.* In the *Callanan* case (at p. 284) it is further said: " If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind, but in case of repudiation, or of a breach going to the root of the contract, unless the damages can be ascertained with reasonable certainty, rescission is a matter of right, with restitution instead of compensation."

If the contract before its completion had been rescinded by the court, the plaintiff would have been entitled not only to an accounting of the proceeds, but also to an order for the return of the twenty-six positive prints which had been intrusted to the defendant at the time of the making of the contract. Assuming for the argument that the relations between the parties were not such relations of confidence and trust as to give equity jurisdiction to decree an account-

ing, nevertheless the plaintiff might rightfully appeal to the equitable arm of the court to compel the surrender by the defendant of these twenty-six positive prints. These prints were stated in the complaint as having been of the value of $8,000. That appears to have been the cost of making them. If the payment of $8,000 would give full protection to the plaintiff in its rights, then equity has no jurisdiction to compel their surrender. But the property itself is of a unique character. Strangers have no right to use these positive prints for the production of this picture, and yet if wrongfully used it is impossible to estimate the damage that may come to the plaintiff. The finding of the court is that one of the copies has in fact been used in the western part of this country for the production of this very picture. Property may thus be unlawfully used to the damage of the real owner, and where the damage by such use is in its nature impossible of calculation, equity will compel the surrender thereof to the rightful owner, and will not leave the owner to a legal action of replevin. The same principle applies to an action brought to compel the specific performance of a contract to deliver personalty. The rule summarized in 36 Cyc. 557, is thus stated: " If the specific thing contracted for is desired by plaintiff, if it cannot be duplicated, and if his reason for desiring it or the other circumstances of the case are such that money damages would not be an adequate compensation to him for its loss, equity will decree its delivery to him. The jurisdiction for this purpose is an outgrowth of, and closely connected with, the remedy for the delivery up of chattels of this special nature tortiously withheld from their owners. *In such cases the legal remedies of replevin and detinue are subject to defects of procedure which prevent the successful plaintiff from invariably recovering possession of the chattel.*"

If replevin were brought for these prints, the execution would run to the sheriff to deliver to the plaintiff the possession of the personal property, and " if the chattel cannot be found within his county, to satisfy the sum so awarded * * * out of the property of the party against whom the judgment is rendered." (Code Civ. Proc. § 1731.) If these positive prints were not within the county wherein

the execution was issued, the action at law would be fruitless to secure their possession. The collection of the value found would in no way compensate the plaintiff's assignor for their loss or protect the plaintiff from the threatened damage of their unlawful production by third parties. Somewhat analogous in principle is the rule that a contract to assign or reassign a patent right or a copyright can be enforced in equity, because of the difficulty in estimating the damages which might flow from a failure to make delivery as stipulated in the contract.

With the right, then, of the plaintiff to appeal to equity at the time the action was brought for the rescission of the contract and restitution of these prints intrusted to the defendant, the plaintiff has lost nothing by the fact that before the trial of the action the contract itself had expired, so that rescission has become unnecessary. It has been held that if equity had jurisdiction of an action when commenced, a change in conditions before judgment would not oust the jurisdiction of the court, even though at the time of judgment there was an adequate remedy at law. (*Van Allen* v. *N. Y. E. R. R. Co.*, 144 N. Y. 174; *Valentine* v. *Richardt*, 126 id. 277; *McNulty* v. *Mt. Morris Electric Light Co.*, 172 id. 410; *Beedle* v. *Bennett*, 122 U. S. 71; *Clark* v. *Wooster*, 119 id. 325.) It would seem clear that in any event the court would not dismiss the complaint, but at the most would send the case to the law calendar for trial. But for this relief no request was made, the defendant relying wholly upon its contention that the complaint should be dismissed. It is unnecessary, however, in this case to invoke any such rule of law, because the plaintiff still needs equity to recover these prints which were intrusted to the defendant and which the defendant stipulated to return at the close of the contract. The legal action of replevin is no more adequate to recover the possession of these prints after the contract has expired than upon a rescission of the contract before its expiration. The plaintiff is entitled to the command of an equity judgment that the defendant return these prints, and to an enforcement of that judgment by proceedings for contempt. Whether or not, therefore, the plaintiff would now be entitled in equity to an accounting, if the payment of the

moneys alone were the measure of plaintiff's rights, with the right to appeal to equity and the necessity of such appeal in order to recover back these prints, the court in equity will assume jurisdiction of the account and compel the defendant to render an honest account of the proceeds from the production of the picture.

The judgment should, therefore, be affirmed, with costs.

Clarke, P. J., Scott, Page and Shearn, JJ., concurred.

Judgment affirmed, with costs.