(71 Misc. Rep. 203.)

BINNS v. VITAGRAPH CO. OF AMERICA.

(Supreme Court, Trial Term, New York County. March, 1911.)

1. LIBEL AND SLANDER (§ 125*)—ACTION—FINDINGS.

On motion to set aside an award of damages for violation of the right of privacy, the verdict having been rendered on an assessment of damages pursuant to the findings of the court at Special Term, where there is no finding by the Special Term that the effect of the representations of the plaintiff was to hold defendant up to ridicule, obloquy, or contempt, the award cannot be sustained on the theory of a libelous publication.

[Ed. Note.—For other cases, see Libel and Slander, Dec. Dig. § 125.*]

2. DAMAGES (§ 102*)—COMPENSATORY DAMAGES—ELEMENTS.

Compensatory damages for violation of the right of privacy in an action under the civil rights law are limited to the humiliation, mortification, and mental distress which the plaintiff may have suffered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 255-259; Dec. Dig. § 102.*]

3. DAMAGES (§ 130*)—EXCESSIVE DAMAGES—GROUNDS OF OBJECTION.

Where plaintiff sought damages for the invasion of his right of privacy by representations of him in a moving picture show in the performance of an act of wide notoriety and of no discreditable character, the jury should consider the fact that plaintiff himself used his name and reputation for his own pecuniary advantage, as tending to show that he did not object to the publicity of his name and picture, and a verdict of $12,500 should be set aside as excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357-367; Dec. Dig. § 130.*]

―――――

Action by John R. Binns against the Vitagraph Company of America. On motion by defendant to set aside a verdict for $12,500 for plaintiff and for new trial. Verdict ordered set aside, unless plaintiff shall reduce it to $2,500.

See, also, 129 N. Y. Supp. 1113.

Arthur F. Hansl, for plaintiff.
Samuel O. Edmonds, for defendant.

GREENBAUM, J. Defendant moves to set aside the verdict of a jury of $12,500 rendered upon an assessment of damages, pursuant to the findings of the court at Special Term. The only important question of law presented at the Trial Term was that touching the measure of damages. It is important to bear in mind the nature of this action, which rests solely upon the provisions of the statute now embraced in the civil rights law (Consol. Laws 1909, c. 6), designed to protect the individual in his right of privacy. The act of the defendant may not be regarded as libelous, nor one involving an infringement of one's business rights, such as those arising in trade-mark, copyright, and unfair trade competition cases.

[1] The peculiar injury which a plaintiff in a case of this kind suffers arises from the unwarranted use by another of his name or picture for advertising or business purposes, not because the plaintiff has thereby been damaged in his business or deprived of profits, but because of the humiliation, mortification, and mental distress which he may have endured by reason of the defendant's invasion or intrusion upon his privacy. In his complaint, the plaintiff expressly alleges that, although he "has received many offers of large sums of money if he would consent to exhibit himself upon the stage and in moving pictures, he has refrained from doing so because, having gained fame and good reputation in a noble adventure, he does not desire to belittle himself in that manner." It is therefore apparent that defendant's use of plaintiff's name and pretended picture in moving picture shows is not claimed by plaintiff to have deprived him of his gains and profits in that business. If plaintiff relied upon the fact that the pictures used by the defendant held him up to ridicule, obloquy or contempt, he could have maintained an action for libel (Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 557, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828), but since there is no finding of fact by the Special Term that such was the effect of the representations of plaintiff by defendant, damages upon the theory of a libelous publication may not be here awarded.

[2, 3] To my mind the compensatory damages to which plaintiff is entitled in this action must be strictly limited to the humiliation, mortification, and mental distress that he may have suffered as a result of defendant's acts. It may well be in considering the extent of his sufferings that the reputation and fame achieved by the plaintiff and the ways, methods, and conditions under which his name and picture were used should be taken into account. But in the effort to ascertain the effect of defendant's acts upon plaintiff's mind and feelings we may not overlook what he has alleged in his complaint and

reaffirmed upon the stand. In his complaint he alleged that "he was engaged in the business of managing an exhibition at Luna Park in Coney Island, N. Y., called 'Saved by Wireless,'" and that this show or exhibition was advertised as being owned and managed by him, and he testified that he was in personal attendance at Luna Park from May until November, 1909, in charge of a wireless telegraph apparatus, in connection with said show. It may also be stated that in his complaint the plaintiff expressly alleged that his "fame and reputation are of great pecuniary value to him in his said business; that the use by the defendant of the name and pictures represented and advertised by defendant to be of plaintiff, as above set forth, has greatly damaged the plaintiff's business and made less valuable to him his said name and pictures"; but there is no finding of fact in the Special Term judgment in respect to this allegation. It is true that plaintiff also alleged that he had refused offers of large sums of money if he would consent to exhibit himself upon the stage and in moving pictures, and that he did not "desire to belittle himself in that manner." But it seems to me that, while he had an undoubted right to determine for himself to what extent and in what way he would utilize his fame and reputation for gain, the fact that he did not object to the advertising of his name in the business enterprise of an exhibition based upon the same heroic adventure as that which formed the subject of the moving picture exhibited by defendant must be considered in determining to what extent, if any, he suffered mental distress by the acts of the defendant.

To my mind the jury, despite the instructions of the court as to the peculiar rule of damages applicable to an action of this kind, was either swayed by passion or prejudice, or was perhaps affected by the quite natural admiration one has for the heroic act of the plaintiff. The statute expressly confers upon the jury the discretion to award exemplary damages. But this discretion must be reasonably exercised. That the jury was led away by passion or feeling is reflected by the argument of the learned counsel for the plaintiff, who, in his brief, has adopted the extraordinary expedient of quoting from editorials in the public press commending the amount of the verdict in this case and deploring its insufficiency and supporting its conclusions upon glaring misconceptions of the facts and a palpable misapprehension of the law applicable to this case. In one of the papers it was asserted that the defendant realized upwards of $300,000 from the moving pictures in question, when, as a matter of fact, there was not a scintilla of evidence upon the subject of the profits or money receipts of the defendant. It would be a sorry day if the administration of justice were relegated to the realms of the newspaper columns, and it is to be deplored that counsel saw fit to attempt to influence the judgment of the court by newspaper citations.

In view of the fact that it appeared upon the trial that plaintiff did not object to the wide publicity his name and picture received by reason of his heroic act, that he was not averse to the pecuniary advantage that his name and reputation gave him, and that the representation of his achievements in the moving pictures of the defendant was

not calculated to belittle the act of the plaintiff, but to glorify him and his heroic deed in somewhat the same manner as the newspapers and magazines did in publishing accounts of the thrilling scenes connected with the heroism of the plaintiff, I cannot find that the plaintiff was seriously hurt in mind by the acts of the defendant. It did not appear that any one had indicated that the moving pictures in question had lowered him in the estimation of others, and giving heed to the rule that the compensatory damages in a case of this kind are limited to the injury resulting from the mental distress and humiliation, I am constrained to conclude that the actual damages to which he would be entitled upon this basis would be small in amount. I recognize, however, that, the judgment of the Special Term being binding upon this court, the jury was warranted in awarding exemplary damages as a warning to others that the right of privacy of the individual must be respected. But in its final analysis the defendant merely attempted to portray in its peculiar way, through the medium of pictures, information and facts connected with the rescue of the steamship Republic, and in doing so the imagination of those who prepared the scenes was indulged in, as was doubtless done by many of the writers of the same incidents in the public press.

Under the circumstances of this case I do not think a verdict of $12,500 is justified, convinced as I am that the jury misapprehended the somewhat subtle rules of damages applicable to this case, and that they must have been influenced by prejudice and passion. The verdict will be set aside, unless the plaintiff stipulates to reduce it to $2,500.

Ordered accordingly.