### BINNS v. VITAGRAPH CO. OF AMERICA.

(Supreme Court, Appellate Division, First Department.   December 1, 1911.)

1. ACTION (§ 53*)—SPLITTING CAUSE—TORTS.

Under Civil Rights Law (Consol. Laws 1909, c. 6) §§ 50, 51, authorizing recovery for unauthorized use of name or portrait of living person without his consent, and also for libel, plaintiff can recover all his damages in one action, and is not permitted to bring one action for violation of his civil rights and another for libel based on the same facts.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 549–623; Dec. Dig. § 53;* Libel and Slander, Cent. Dig. § 172.*]

2. DAMAGES (§ 130*)—CIVIL RIGHTS—RIGHTS OF PRIVACY—VIOLATION.

Plaintiff, a wireless telegraph operator, having obtained wide notoriety by reason of his gallantry in connection with the wreck of a steamship, sued defendant for using his name and picture in connection with moving picture exhibitions, purporting to show the wreck, some of the films being disconnected with the scene and exhibiting plaintiff in a ridiculous pos-

---

ture. There was also evidence that plaintiff. was greatly disturbed in mind, and that his feelings were injured, and defendant gave no evidence that it acted innocently or of mitigating circumstances, did not recall the films, or offer to account to the plaintiff. *Held* that, since Civil Rights Law (Consol. Laws 1909, c. 6) §§ 50, 51, authorized a recovery of exemplary damages for the unlawful use of the name or picture of a living person, a verdict allowing plaintiff $12,500 was not excessive.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 130.*]

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by John R. Binns against the Vitagraph Company of America for violation of his right to privacy. From an order setting aside a verdict of $12,500 rendered on an assessment of damages and granting a new trial, unless plaintiff stipulated to reduce the verdict to $2,500 (71 Misc. Rep. 203, 130 N. Y. Supp. 876), plaintiff appeals. Reversed, and verdict reinstated.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and MILLER, JJ.

Arthur F. Hansl, for appellant.
James J. Allen, for respondent.

LAUGHLIN, J. This action is brought pursuant to the provisions of section 51 of the civil rights law for an injunction and for damages. The plaintiff was employed as a telegraph operator by the Marconi Wireless Telegraph Company on the passenger steamship Republic which collided with the steamer Florida on the 23d day of January, 1909, whereby the lives of the passengers, numbering about 1,700, were endangered, but they were ultimately saved as the result of wireless messages sent out by the plaintiff, who, for gallantry, received the commendation of many nations, of numerous civil bodies, and of the press of the world, and his picture was published quite extensively in connection with the articles giving an account of the collision and rescue. Plaintiff received many offers attractive from a financial standpoint if he would consent to exhibit himself as a hero of the disaster, but they were all declined. Immediately after the wreck of the Republic, the defendant, which was engaged in manufacturing, leasing, licensing, selling, distributing, and circulating photographic films for use in motion picture machines in the state of New York and elsewhere, made certain moving picture films entitled, "C. Q. D. or Saved by Wireless; a True Story of the Wreck of the Republic," with subtitles, among others, of "John R. Binns, the wireless operator in his cabin aboard the S. S. Republic"; and, "With the ship all in darkness Jack Binns sounds the C. Q. D. wireless signal of distress"; and, "The wireless station at Siasconset, Mass., gets Jack Binns' message and replies 'All right old man, where are you?' "; and, "Although the passengers left the ship, Jack Binns, and the captain, officers and crew of the Republic, stuck to their posts"; and, "Guided by the constant wireless messages from Binns, the Baltic locates the crippled Republic and Florida and stands by for assistance"; and, "Jack Binns

and his good American Smile." Following each subtitle in the written text upon the motion picture film was exposed a dramatic picture, in which the scene of which the text was the subtitle was pictorially enacted. The defendant produced the films by employing an actor to represent plaintiff in the various scenes before a motion picture camera.

The plaintiff contends that this was a representation that the various pictures were true photographs of him; that the inference would be that he, under some financial inducement, had consented to sit therefor, and to allow this use of his name and photograph; that some of the pictures made him appear ridiculous, and constituted a reflection upon him, for they showed him fiercely puffing a cigarette during the crisis, and particularly that the last film was wholly disconnected with the scene at the time of the collision and exhibits him in a ridiculous posture, smiling and smoking a cigarette, and winking and making grimaces for the amusement of the spectators. The defendant, after producing the films, leased the same for hire to 49 different exchanges, 11 of which were in the state of New York, for exhibition; and these exchanges, in turn, licensed other customers to use the same in giving public exhibitions. The main issue as to whether the plaintiff's rights under the statute were invaded and whether he was entitled to injunctive relief were first tried out at Special Term, and on the appeal from an interlocutory judgment in his favor this court affirmed the judgment, which enjoined the defendant from using the plaintiff's name, portrait, or picture, and directed that the damages be assessed by a jury.

Following the decision of Roberson v. Rochester Folding Box Co., 171 N. Y. 538, 64 N. E. 442, 59 L. R. A. 478, 89 Am. St. Rep. 828, by which the Court of Appeals held that the law afforded no redress in such cases, the Legislature enacted chapter 132 of the Laws of 1903, now sections 50 and 51 of the civil rights law, by which it is declared to be a misdemeanor to use for advertising purposes or purposes of trade the name, portrait, or picture of any living person without having first obtained his consent in writing thereto, or, if a minor, the consent of his parent or guardian, and that such use might be enjoined and that damages therefor might be recovered, and, further, that, if the name, portrait, or picture shall have been knowingly so used, exemplary damages might be awarded in the discretion of the jury. In the case at bar, not only was the use of plaintiff's name and representation of his picture unauthorized and in violation of the statute, but it was made without any attempt to obtain his consent, and with the sole view of obtaining profit to the defendant thereby. On suit being brought, no effort was made by the defendant to make amends. It neither attempted to recall the films or to discontinue the use thereof, and it did not, so far as appears, offer to account to plaintiff for any part of the profits it made on the unauthorized use of his name and portrait. The defendant failed to place upon the stand any officer or employé to show that it acted innocently or to state a mitigating fact or circumstance in its behalf, and, instead of offering proof of the compensation which it had received or was to receive under the contracts which it had made,

it objected to proof of the terms of the contracts and of the compensation it received. The plaintiff claims that he was greatly disturbed in mind, and that his feelings were injured by the acts of the defendant, and the inference which would be drawn therefrom that he had commercialized his fame thus accidently received. The defendant contends that plaintiff's feelings could not have been very sensitive in this regard, for he accepted employment from one Thompson, at Coney Island, near one of the places where the motion pictures in question were displayed, to take charge of a wireless Marconi apparatus pursuant to an arrangement made between said Thompson and the Marconi Company for the use of said apparatus in an exhibition entitled "Saved by Wireless." The plaintiff, however, shows that this was not a representation of the collision between the Republic and the Florida, and that it was an employment in the line of his profession, and that it was distinctly understood that he was not to appear in public or take part in the exhibition, but was merely to have charge of the apparatus. However, he concedes that his name was to be used, and that the show was to be and was in fact advertised as his own exhibition. All of these facts were fully placed before the jury, and doubtless the verdict is composed principally of exemplary damages.

[1] The opinion written by the learned justice before whom the damages were assessed indicates that he considered that in so far as this use of the plaintiff's name and picture constituted a libel there could be no recovery in this action, and evidently that view largely influenced his determination to set aside the verdict. We are of opinion that the plaintiff can have only one recovery in the premises, and that it must be in this action. The terms of the statute are very broad, and they include all of the damages sustained by the plaintiff. It would be difficult to avoid a double recovery if the jury were to be permitted in one action to give damages under the statute for a violation of rights protected thereby, and in another action for the libel based on the same acts.

[2] Of course, the court is warranted in setting aside a verdict as excessive rendered under this statute, but, the Legislature having expressly authorized the recovery of exemplary damages in the discretion of the jury, we are of opinion that on the facts here presented the verdict should not be deemed so excessive as to warrant the court in setting it aside, or in requiring the plaintiff to reduce it as a condition of avoiding a new trial. This is a new statute designed to protect important personal rights of privacy, and both as a punishment to defendant and in order to deter others from violating the law and invading such rights it is necessary that the jury in a proper case liberally award exemplary damages.

It follows, therefore, that the order should be reversed, with $10 costs and disbursements, and the motion to set aside the verdict denied, with $10 costs, and the verdict reinstated.

INGRAHAM, P. J., and SCOTT and MILLER, JJ., concur. McLAUGHLIN, J., dissents.