GILBERT ADRIAN, Appellant, v. IRVING UNTERMAN et al., Respondents, et al., Defendants.

First Department, December 16, 1952.

*Joseph M. Proskauer* of counsel (*Eugene Eisenmann, John B. Doyle* and *Arthur H. Deibert* with him on the brief; *John B. Doyle,* attorney), for appellant.

*Archibald Palmer* for respondents.

VAN VOORHIS, J.   Plaintiff-appellant asks for an injunction restraining defendants from manufacturing or selling perfumery and other articles bearing plaintiff's surname " Adrian ", with or without his facsimile signature.   The demands in the complaint for an accounting of profits and damages were not pressed upon the argument of this appeal, and, since there is scant evidence of damages in the record, this discussion will be confined to the subject of injunctive relief.

The facts are not in serious dispute.   Plaintiff is well and favorably known as a women's dress designer.   He never manufactured perfumery, nor has he been connected personally with the perfumery business.   In 1944 he entered into a contract with one Overhamm, whereby the latter was allowed to use plaintiff's surname " Adrian " in connection with the sale of perfumery, for which privilege plaintiff was to be paid a royalty.   Overhamm caused this name to be registered as a trade-mark in connection with the sale of perfumery, and sold large quantities of perfumery under that trade name.   This business was conducted through the medium of two corporations, organized and owned by Overhamm, known as Parfums Adrian, Inc., and Harad

Chemists, Inc. Royalties were paid to plaintiff by these corporations in amounts which were computed in accordance with the written contract made in 1944 between plaintiff and Overhamm. No written assignment of the "Adrian" trade-mark, registered by Overhamm, was made by Overhamm to either of these corporations, nor did either assume the obligations of Overhamm to plaintiff under the contract. Overhamm made the contract available to Parfums Adrian, Inc., which conducted the perfumery business and performed Overhamm's obligations to plaintiff as Overhamm's alter ego.

Parfums Adrian, Inc., together with other corporations owned by Overhamm, became merged into Harad Chemists, Inc., which thereafter encountered financial difficulties. It made an assignment for creditors to an assignee who sold the corporate assets to defendant-respondent Unterman. The assignees' bill of sale stated that it transferred "right, title and interest, if any, of the assignee, in and to any and all names and trade names of Harad Chemists Inc. of 549 West 52 Street, New York, New York, includes good will". The purchase price was $300.

The complaint has been dismissed upon the report of the Official Referee upon the ground that plaintiff assigned the right to use the name "Adrian" in connection with perfumes, cosmetics and kindred articles to Overhamm in 1944 by the contract above mentioned, with the right to him to assign, sell and transfer it to others; that he did so in 1945 to Parfums Adrian, Inc., which became merged with Harad Chemists, Inc., whose assignees for creditors sold it to Unterman. The Official Referee dismissed the complaint upon the further ground that due to the lapse of time between the receiver's sale on June 1, 1949, and the commencement of this action on May 14, 1951, plaintiff is estopped from maintaining it in view of the finding that he had knowledge of the continued sale of such perfumes during the interim by Unterman and his assignee Perfumerie Harad, Ltd. It was further held that plaintiff had failed to prove that these defendants violated plaintiff's rights under sections 50 and 51 of the Civil Rights Law.

Some point was made by respondents that plaintiff is not the real party in interest to maintain the action, for the reason that he had transferred the right to use his name in connection with women's dress goods to a corporation known as Adrian, Inc. The Official Referee pointed out in his opinion that this corporation is controlled by plaintiff, his wife being the sole other stockholder, and indicated that he would not have dismissed the complaint upon that ground alone.

An analysis of these facts leads to the conclusion that plaintiff-appellant's application for an injunction ought to have been granted. Although it is true that the 1944 contract between plaintiff and Overhamm states that it shall be binding upon and inure to the benefit of assigns of the parties, it has been held regardless of a similar clause that " the intention of the parties is to be gathered not from one clause, but from the entire instrument (*People* v. *Gluck,* 188 N. Y. 167; *Heryford* v. *Davis,* 102 U. S. 235), and when it is thus read it clearly appears that Barnett and Barse were to personally carry out the terms of the agreement, and did not have a right to assign it. This follows from the language used, which shows that a personal trust or confidence was reposed by the plaintiff in Barnett and Barse when the agreement was made." (*Nassau Hotel Co.* v. *Barnett & Barse Corp.,* 162 App. Div. 381, 383, affd. 212 N. Y. 568; *Paige* v. *Faure,* 229 N. Y. 114.) The present contract states that Overhamm shall have the exclusive right and privilege to use and employ plaintiff's name in connection with the manufacture, sale and distribution " by Overhamm " of perfumes. It is unlikely that plaintiff intended to vest Overhamm with the unrestricted right to sell the use of his name in marketing perfumery to anyone or everyone that he might select. The personal nature of the agreement is attested further by the clause that nothing therein contained shall " give to Overhamm any interest in the name ' Adrian,' except in connection with the manufacture, sale and distribution *by said Overhamm* of perfumes ". (Italics supplied.)

Moreover, it does not appear that Overhamm purported to assign this trade name to Parfums Adrian, Inc., or to Harad Chemists, Inc. These corporations were owned and managed by Overhamm, and were employed by him as vehicles to perform his part of his contract with plaintiff. No written assignment was ever made purporting to assign the contract to either corporation, neither of them covenanted to assume Overhamm's obligations to plaintiff, nor, in the assignment proceeding for creditors of Harad Chemists, Inc., was plaintiff listed as a creditor of the merged corporation Parfums Adrian, Inc., notwithstanding that more than $13,000 was then owing to plaintiff in royalties. Parfums Adrian, Inc., was the corporation to which defendants-respondents claim that Overhamm had assigned his contract with plaintiff, and through which they claim title to the trade name, but the omission to list plaintiff as a creditor signifies that this corporation was regarded as having acted as Overhamm's alter ego and not as his assignee.

It evidently did not carry these royalty payments as corporate obligations on its books. Neither did the assignees for creditors assume to sell any particular trade name, but only such interest " if any " in unspecified names as they possessed.

Prior to the assignees' sale, and before Unterman claims to have acquired this trade name, Overhamm defaulted under the 1944 contract in paying royalties to plaintiff. An arbitration proceeding was conducted in California pursuant to the contract and, after finding that Overhamm had broken the agreement, the arbitrator found " the said contract to be no longer in effect as of July 30th, 1948, and awards to Gilbert Adrian the amount of $13,363.17 as payment due under the contract for the year 1947." Judgment was entered upon this award in the Superior Court of California, upon which an action was brought in New York State entitled *Gilbert Adrian v. Wolf J. Overhamm,* in which judgment was entered determining that said 1944 agreement " for the use of the plaintiff's name ' Adrian ' in connection with manufacture, sale and distribution by the defendant of perfumes, cosmetics and kindred products, has been breached by the defendant, and was, therefore, terminated and no longer in effect as of July 30, 1948," and adjudging that Overhamm, his agents, privies and assigns be restrained from using the name " Adrian " and facsimile signature thereof for the purpose mentioned. Overhamm thereupon caused the registration of the trade mark " Adrian ", which he had procured, to be cancelled. Inasmuch as any right, title or interest which was possessed by Parfums Adrian, Inc. or Harad Chemists, Inc. stemmed from this agreement, not to them as assignees of Overhamm but as his agents or alter egos, an adjudication in an action between plaintiff and Overhamm that the latter's right to the name had ceased, defeats any title which Unterman or his assignee could claim to have derived through the assignees' sale of Harad Chemists, Inc.

It is not perceived that plaintiff was subject to a duty to attend the assignees' sale and give notice that the purchaser would not acquire the right to use his name. Especially is this true in view of the circumstance that the assignees did not purport to sell a particular trade name, but put prospective purchasers upon inquiry to investigate the title, by the use of the words " if any " in connection with " title and interest " in any names which might be disposed of. Respondents are chargeable with notice of whatever such an inquiry would have disclosed. Plaintiff is not estopped to deny that Unterman acquired the right to use his name for purposes of trade or

of advertising perfumery by anything which he did or omitted to do at the time of the assignees' sale.

This brings us to the question of whether plaintiff is guilty of laches by neglecting to institute the present action until nearly two years had elapsed after the sale, during a portion of which interval he knew that Unterman or his assignee, defendant Perfumerie Harad, Ltd., was selling perfumery under his name. Respondents' contention is that plaintiff could not without protest watch respondents expending money and services in the development of good will in connection with his name in the perfumery business, without losing the right to object. This point is answered by the fact that on July 18, 1949, plaintiff's attorney wrote to Unterman telling him that he had no right to use plaintiff's name.

It may seriously be doubted that plaintiff ever transferred any property right in his name by the 1944 agreement even to Overhamm, except by way of consent to use for purposes of advertising or trade under sections 50 and 51 of the Civil Rights Law. As has been pointed out, plaintiff had never engaged in the perfumery business. He was a fashion designer for women's apparel. His name, '' Adrian '', had never been known in conjunction with perfumery. It was held in *Falk* v. *American West Indies Trading Co.* (180 N. Y. 445) that a name trade-mark cannot be transferred or detached from the business in which it had theretofore been used. In *Rockowitz C. & B. Corp.* v. *Madame X Co.* (248 N. Y. 272, 278–279), the Court of Appeals said that '' it must be remembered that a trade-mark is a species of property to be used in connection with a going business. It has no value in and of itself. In *United Drug Co.* v. *Rectanus Co.* (248 U. S. 90, p. 97) the court said: ' There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good-will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.'

'' Registration does not create a trade-mark. It is not essential to its validity. (*Pulitzer Pub. Co.* v. *Houston Printing Co.*, 4 Fed. Rep. [2d] 924.) And in *Hanover Star Milling Co.* v. *Metcalf* (240 U. S. 403) it was said: ' In short, the trade-mark

is treated as merely a protection for the good-will, and not the subject of property except in connection with an existing business.'

" This court likewise said in *Falk* v. *American West Indies Trading Co.* (180 N. Y. 445, p. 450): ' A trade-mark is not a piece of property that passes from hand to hand by assignment separate from the business of the owner of the trade-mark or of the article which it may serve to distinguish. Generally, it passes only with the business and good will of which it is an inseparable part.' "

The exact question appears to have been decided in *Foster Canning Co.* v. *Lardan Packing Co.* (17 N. Y. S. 2d 583, LOCK-WOOD, J.), holding that a company which had marketed fruit and vegetable products under the registered name of " Jim Dandy," but which had never marketed any dog or other animal food under such name, could not confer a right on defendant to market dog food under the same name, since a trade-mark is a species of property to be used in connection with a going business. The rule in the Federal courts is the same (*American Broadcasting Co.* v. *Wahl Co.*, 121 F. 2d 412).

Adrian's name could hardly have been transferred to Over-hamm apart from a business which Adrian had conducted or with which he had been associated.

It follows that for all of the reasons mentioned respondents Unterman and Perfumerie Harad, Ltd. can have acquired no property interest in the use of the name " Adrian " in conjunction with their business, and that no consent, written or otherwise, has been established to such use. The use of plaintiff's name by respondents to advertise perfumery is manifestly for advertising or trade purposes, and constitutes a violation of plaintiff's right of privacy under sections 50 and 51 of the Civil Rights Law. (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55.) Estoppel is insufficient as a defense to such a cause of action, in view of the express statutory requirement of written consent (*Hammond* v. *Crowell Publishing Co.*, 253 App. Div. 205, 206; *Lane* v. *Woolworth Co.*, 171 Misc. 66, affd. 256 App. Div. 1065).

The circumstance that plaintiff has commercialized his name in connection with dress designs and items of ladies' apparel, does not prevent him from resorting to sections 50 and 51 of the Civil Rights Law to restrain the use of his name for other commercial purposes, especially those in conjunction with which he has not established a trade name. Neither has plaintiff waived the benefit of the Civil Rights Law by consenting for

a time to have his name used in the perfumery field by Over-hamm. The duration of that consent had expired, as Overhamm signified by canceling the registered trade-mark following the Californian arbitration. There was no general abandonment of the name by plaintiff when he contracted with Overhamm (*Neva-Wet Corp.* v. *Never Wet Processing Corp.*, 277 N. Y. 163, 173; *New York Herald Co.* v. *Star Co.*, 146 F. 204, 205, affd. 146 F. 1023).

If no property existed in plaintiff's name as a trade name for perfumery, due to the circumstance that plaintiff had not engaged in that business, then plaintiff is entitled to an injunction under the Civil Rights Law. We think, also, that plaintiff is entitled to an injunction under the law of unfair competition, regardless of whether he had established a trade name by use of his name in conjunction with perfumery (*Tiffany & Co.* v. *Tiffany Productions, Inc.*, 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482; *Long's Hat Stores Corp.* v. *Long's Clothes, Inc.*, 224 App. Div. 497; *Martha Washington Candies Co.* v. *Martha Washington Ice Cream Co.*, 280 App. Div. 256; *Albro Metal Products Corp.* v. *Alper*, 281 App. Div. 68).

The statute includes the use of a surname alone (*Orsini* v. *Eastern Wine Corp.*, 190 Misc. 235, affd. 273 App. Div. 947).

There is no substance to the contention that plaintiff does not come into equity with clean hands.

The judgment appealed from should be reversed and defendants-respondents, their agents, servants, representatives and privies, should be restrained and enjoined from manufacturing, selling or offering for sale perfumes, cosmetics and kindred articles bearing the name " Adrian " or said name with plaintiff's facsimile signature thereon, or any imitation thereof, and from using said name " Adrian " upon packages containing any of said articles, with costs of the appeal to appellant.

DORE, J. P., COHN and BREITEL, JJ., concur.

Judgment unanimously reversed, with costs to the appellant. Settle order on notice.