Maryland **MANGER**, Plaintiff-Appellee,

v.

**KREE INSTITUTE OF ELECTROLYSIS,**
Inc. and Garo Artinian, Defendants-Appellants.

No. 303, Docket 23967.

United States Court of Appeals
Second Circuit.

Argued April 5, 1956.
Decided May 3, 1956.

Sidney Freiberg and Leslie Kirsch, New York City, for plaintiff-appellee.

Vincent Yardum, New York City, for defendants-appellants.

Before FRANK, MEDINA and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

Plaintiff sued defendants for violation of her "right of privacy" granted by Section 51 of the New York Civil Rights Law, McK.Consol.Laws, c. 6.[1] The case was tried to a jury which returned a general verdict for plaintiff.

There was evidence from which the jury could reasonably have found, and which we must assume they found, the following: The defendant, Kree Institute, is a corporation engaged in the teaching of electrolysis and the sale of electrolysis equipment for the permanent removal of superfluous hair from the body, known in the trade as "Radiomatic." Defendant Artinian is the sole stockholder of Kree Institute and its president; he is also editor of the magazine "Kree Electrologist," published by the Institute. The Institute in 1949 conducted a contest, open only to practicing electrologists, in which prizes were to be awarded to the writers of the best letters on the subject of "Why I am Glad I Chose Electrolysis as a Career." Plaintiff sent a letter to the contest in which she won first prize. She gave her written consent to the publication in the defendant's magazine of her letter and her photograph. The letter, published (together with her picture) in a Special Contest Issue and in the regular August-September, 1949 issue, had been changed by an employee of the Institute with Artinian's approval, so that plaintiff's statement that she found "the excellent and rapid Radio 'Short-Wave' equipment fascinating * * *," was made to read "rapid Radio-

1. This law reads in part as follows:
 Section 50.
 "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or if a minor of his or her parent or guardian, is guilty of a misdemeanor."
 Section 51.
 "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages."

matic (Short-Wave)." Also, the headline of the article containing the letters of the contest winners referred to them as "Kree Operators." Plaintiff did not consent to this change or to the publication of the altered article and her picture accompanying it. Plaintiff has been a practicing electrologist for more than twenty years (one who permanently removes superfluous hair from the human body). She has never used the defendant's Radiomatic equipment in her practice. She has written a book, "How to Develop a Successful Electrolysis Practice," which has been published and circulated nationally. Plaintiff also has written articles on her profession which have appeared in various periodicals, and her biographical sketch was published in "Who's Who in America."

 The judge, in his charge, left it to the jury to determine, in its general verdict, whether plaintiff had in writing consented to the publication, and whether defendants had knowingly altered it and published it as altered, and what were her damages. The jury returned a verdict for plaintiff in the amount of $2,250. The judge held the verdict not excessive, and entered judgment on the verdict; from that judgment, defendants have appealed.[2]

 On the basis of the foregoing, there can be no doubt as to the following: (a) The change in the plaintiff's letter was so substantial as to vitiate her written consent. (b) The defendant's publication was knowingly used for "advertising purposes" (as well as for "purposes of trade") within the meaning of Section 51 of the New York Statute. (c) Such a publication, without her written consent violated that statute and entitled her to damages.[2a]

 Section 51, as distinguished from Section 50, is not penal.[3] The basis of right of privacy of New York is statutory;[3a] the enactment of the statute stemmed from severe criticisms of a New York decision holding that, at common law, there was no "right of privacy" invaded by advertising.[4] Accordingly, the

---

2. We think defendant's various motions were adequate so that he may raise on this appeal the question of whether the court below erred, as a matter of law, in letting the case go to the jury.

At the close of plaintiff's case, defendant moved to dismiss the complaint—presumably under Fed.Rules Civ.Proc. 41 (b), 28 U.S.C.A.—on the ground that plaintiff's evidence was insufficient to establish a violation of her rights under the Civil Rights Law.

At the close of all the evidence, before the defendant could make the appropriate motion, the court said, "I will assume that the same motions made at the end of the plaintiff's case are now renewed by the defendant and I make the same ruling." In order to raise on appeal the legal insufficiency of plaintiff's evidence to establish a violation of the New York Civil Rights Law, defendant should have moved for a directed verdict under Rule 50. See 5 Moore, Federal Practice Section 50.05. We think the facts sufficient to establish that defendant made such a motion. Although there are important differences between a motion to dismiss under Rule 41(b) and a motion for a directed verdict under Rule 50, they serve somewhat similar functions and generally achieve substantially the same result;

5 Moore, Federal Practice, pp. 1006, 1043–1046. We therefore think that, in as much as the court made the motion for defendant, we should assume that the proper motion had been made. We also think the judge and the plaintiff had adequate notice that defendant was objecting to the legal sufficiency of plaintiff's case.

2a. There was no "estoppel" resulting from the fact that plaintiff had elsewhere used her name in connection with publications concerning her "profession." See Adrian v. Unterman, 281 App.Div. 81, 88–89, 118 N.Y.S.2d 121, affirmed 306 N.Y. 771, 118 N.E.2d 477.

3. Jackson v. Consumer Publications, Inc., 169 Misc. 1022, 1024, 10 N.Y.S.2d 691, affirmed 256 App.Div. 965, 10 N.Y.S.2d 694.

3a. The right of privacy under the New York Statute is more restricted than that right in states where it has been recognized without legislation. See Nizer, The Right of Privacy, 39 Mich.L.Rev. (1941) 526, 538–539.

4. Roberson v. Rochester Folding-Box Co., 171 N.Y. 538, 64 N.E. 442, 59 L.R.A. 478. For contemporaneous criticism of the Roberson case, see New York Times,

provision of the New York statute relating to "advertising purposes" has been more liberally construed than the provision as to "purposes of trade." See, Gautier v. Pro-Football, 278 App.Div. 431, 434, 106 N.Y.S.2d 553, affirmed 304 N.Y. 354, 107 N.E.2d 485; Hofstadter, The Development of the Right of Privacy in New York, 127 N.Y.L.J., April 21, 1952, page 1568. Therefore we think the court below did not err in refusing to take the case from the jury. The verdict was not excessive despite the absence of definite proof of damages.[5]

■ The judge did not err in receiving in evidence a pamphlet advertising defendant's electrolysis course which was not published until some time after the publication here complained of. It tended to show that the publication of plaintiff's letter and picture in the "Kree Electrologist" was both for advertising purposes and for "purposes of trade."

Affirmed.

---

August 23, 1902, quoted in O'Brien, The Right of Privacy, 2 Col.L.Rev. (1902) 437; Larremore, The Law of Privacy, 12 Col.L.Rev. (1912), 693, 694; Nizer, The Right of Privacy, 39 Mich.L.Rev. (1941) 526, 532, 538.

5. The New York decisions hold that a person like plaintiff can recover substantial damages for mental distress and disturbance of peace of mind. See, e. g., Binns v. Vitagraph Co. of America, 71 Misc. 203, 130 N.Y.S. 876, reversed 147 App.Div. 783, 132 N.Y.S. 237, affirmed 210 N.Y. 51, 103 N.E. 1108, L.R.A.1915C, 839; Fisher v. Murray M. Rosenberg, Inc., Sup., 175 Misc. 370, 23 N.Y.S.2d 677; cf. Miller v. Madison Square Garden Corp., Sup., 176 Misc. 714, 28 N.Y.S. 2d 811; Foerster v. Ridder, Sup., 57 N. Y.S.2d 668, 669. This is also the general rule prevailing in states where a similar common law right of privacy is recognized. 41 Am.Jur., Privacy, Section 34; Annotation 138 A.L.R. 106. See also Warren and Brandeis, "The Right of Privacy," 4 Harv.L.Rev. (1890) 193, 219.

"The fact that in cases involving infringements of the right of privacy the damages may be difficult of ascertainment or cannot be measured by a pecuniary standard is not a good ground for denying recovery at all." 41 Am.Jur., Privacy, Section 34. Cf. Metzger v. Dell

---

**VERMONT STRUCTURAL SLATE COMPANY, Inc., Plaintiff-Appellee,**

v.

**TATKO BROTHERS SLATE COMPANY, Inc., Defendant-Appellant.**

**No. 313, Docket 23886.**

United States Court of Appeals Second Circuit.

Argued April 3, 1956.

Decided May 8, 1956.

Publishing Co., Sup., 207 Misc. 182, 186, 136 N.Y.S.2d 888; Eick v. Perk Dog Food Co., 347 Ill.App. 293, 106 N.E.2d 742. Of necessity, the question of the measure of these damages is a matter that should be left to the sound discretion of the jury. McCormick, Damages (1935), 318-319; cf. Foerster v. Ridder, supra, 57 N.Y.S.2d at page 669.

We think the trial judge did not "abuse" his discretion in refusing to set aside the jury's verdict as excessive. See Binns v. Vitagraph Co. of America, supra; Fisher v. Murray M. Rosenberg, Inc., supra.

Where the statutory right of privacy has been invaded, apparently damages may be awarded not only for mental distress but also for injury to "a so-called 'property' interest inherent and inextricably interwoven in the individual's personality." See Gautier v. Pro-Football, Inc., 278 App.Div. 431, 438, 106 N.Y.S.2d 553, 560, citing Redmond v. Columbia Pictures Corp., 277 N.Y. 707, 14 N.E.2d 636. Plaintiff testified that she had lost opportunities to endorse products other than plaintiff's, but the judge did not permit her to testify as to the amount of resulting financial loss. Accordingly, there was no proof of that amount.

**10**

John C. Blair, Stamford, Conn., Clarence S. Lyon, Stamford, Conn., of counsel, for plaintiff-appellee.

W. Brown Morton, Jr., New York City, Maxwell E. Sparrow, New York City, James F. Sennett, Granville, N. Y., of counsel, for defendant-appellant.

Before FRANK, MEDINA and WATERMAN, Circuit Judges.

---

Plaintiff might, perhaps, have sued for invasion of her "right of publicity"—Haelan Laboratories, Inc., v. Topps Chewing Gum, Inc., 2 Cir., 202 F.2d 866, 868—but did not do so.

Aside from any right of "privacy" or "publicity," perhaps she might also have had a cause of action for publication of a garbled version of her essay. See Granz v. Harris, 2 Cir., 198 F.2d 585, at page 589, concurring opinion, and

cases there cited; cf. Strauss, The Moral Right of the Author, 4 Am.J. of Comp. Law (1955) 506, 525–529. But this cause of action was not presented to the jury.