Charles C. Welch, Respondent, v Mr. Christmas Incorporated, Appellant.

First Department, February 23, 1982

APPEARANCES OF COUNSEL

*Dennis G. Jacobs* of counsel (*Simpson Thacher & Bartlett,* attorneys), for appellant.

*James P. Costello* of counsel (*Peter Campbell Brown* with him on the brief; *James P. Costello,* attorney), for respondent.

OPINION OF THE COURT

*Per Curiam.*

In November, 1973, plaintiff, a professional actor, entered into a one-year contract with defendant's advertising firm for his performance in a single Mr. Christmas commercial. The contract provided for an option for the use of the commercial in the following year, 1974. Plaintiff's minimum compensation was fixed at $1,000 for use in the option year. Plaintiff brought this action after learning

that the commercial was aired on television in several cities in the 1975 Christmas season. The amended complaint alleged causes of action for violation of section 51 of the Civil Rights Law for breach of contract and for fraud. During the course of the trial, plaintiff discontinued his contract and fraud claims. The case was submitted to the jury solely on the section 51 civil rights claim. The jury returned a verdict for plaintiff in the amount of $1,000 compensatory damages and $25,000 punitive damages. The trial court ruled the award of punitive damages to be excessive and reduced such award to $15,000, to which plaintiff stipulated.

On appeal, defendant raises three intriguing questions concerning actions under section 51 of the Civil Rights Law. That section states: "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages". First, defendant argues that no evidence supports the necessary element of a civil rights action, that of use by the defendant. Second, defendant contends that this section does not provide a remedy for a use outside the scope of a contract wherein plaintiff has, from the outset, consented to the utilization of his image for advertising purposes. Third, the point is made that punitive damages cannot be sustained where defendant's conduct cannot be characterized as morally culpable or actuated by evil and reprehensible motives.

A review of the additional evidence presented at trial, which is to be viewed most favorably to the prevailing party, the plaintiff, reveals the following: Defendant, itself or through its advertising agency, arranged most of its own promotional activity directly. However, there was a regu-

lar, alternate pattern of promotional activity, involving the use of this commercial in which plaintiff appeared. Defendant distributed prints of the commercial to local distributors of its product line and these local distributors arranged air time for the commercial. The commercial was used in the 1974 Christmas season under the option provision of plaintiff's contract, without prior notice or payment to plaintiff. This led to a dispute between the parties, which resulted in a financial settlement. In acknowledgement of payments made for use of the commercial in the second season, in early 1975, defendant was specifically put on notice by plaintiff's representative, the Screen Actors Guild, that the maximum use period to play the commercial had by then expired and that further negotiations with plaintiff would be required if further use was desired. Nonetheless, the commercial was aired during the 1975 Christmas season. There was evidence of such use on a single occasion in Rochester, New York, and on approximately 10 occasions in Colorado. Plaintiff did not establish that defendant arranged or paid for the air time during which the commercial was exhibited but the jury could quite reasonably have found that defendant had made little or no effort to inform its local distributors of the expiration of the period of permissible use of the commercial, let alone to restrain any exhibition of the commercial by undertaking the repossession of prints thereof.

We find plaintiff's evidence sufficient to form the basis of a claim against defendant under section 51 of the Civil Rights Law. We must reject defendant's contention that there was no showing of the use by it of the commercial. Mr. Christmas, in directing the production and distribution of the commercial, and in encouraging local distributors of its product line to use the material it prepared and supplied, and in failing to take any substantial steps to limit the dissemination of the commercial after the period of permissible use expired, must be deemed to have "contributed to [and] participated in the unauthorized publication" (*Brinkley v Casablancas*, 80 AD2d 428, 443).

A more involved issue is raised by defendant's contention that use of the commercial beyond the scope of plaintiff's contract does not give rise to a claim under the Civil

Rights Law, but must be redressed as a mere breach of contract. The essence of the argument is that plaintiff, having explicitly permitted the exhibition of his performance for trade purposes, must be held to have relinquished his right of privacy. It would appear that the genesis of this argument is the opinion of the Appellate Division and one of the opinions of the Court of Appeals in *Gautier v Pro-Football, Inc.* (278 App Div 431, affd 304 NY 354). There, an animal trainer contracted to perform his act during the half time intermission of a professional football game. The performance was telecast live and the exhibition was seen by the home audience between two commercials. Judgment in the performer's favor was reversed by this court (p 437) on the ground that the telecast of his performance was not "for the purposes of trade". This court expressed the additional comment that "the extent of the impingement on plaintiff's privacy would in this case seem to be minimal. There was no substantial invasion of plaintiff's 'right to be let alone' in telecasting an act voluntarily performed by plaintiff for pay before 35,000 spectators" (278 App Div, at p 438). The Court of Appeals affirmed the dismissal of that plaintiff's complaint. Judge FROESSEL's opinion in the Court of Appeals, obtaining a four-Judge majority, held the telecast of plaintiff's live performance did not constitute a use of plaintiff's picture for advertising purposes under the Civil Rights Law. Judge DESMOND concurred, alone in a separate opinion, on the basis that there could be no claim of invasion of any right to privacy after a professional entertainer undertook to perform before a vast audience in an athletic stadium. While it is the majority opinion which states the law of the State, the view expressed in the concurring opinion has frequently been relied upon. This court in *Wrangell v Hathaway Co.* (22 AD2d 649) and *McAdam v Ridge Press* (57 AD2d 763) rejected claims under section 51 of the Civil Rights Law which were based upon uses of plaintiffs' images in connection with a product other than that to which consent to use had been expressly limited. Those cases may be distinguished on the basis that they involved an outstanding, valid, albeit limited, consent while this one involves use after the stated period of permissible use

had elapsed. It may be that those cases were also influenced by a view of the statute excluding from its scope any wrong committed against one who places himself in the public eye and which might be cognizable as a breach of contract. Such a view should have been put to rest by this court's thorough and comprehensive opinion in *Brinkley v Casablancas* (*supra,* p 439 [per SULLIVAN, J.]) wherein it is stated, "a public figure has a privacy interest which finds recognition in the statute and for the violation of which a remedy of monetary redress is provided". Thus, the question on this aspect of the appeal is solely whether the use of a commercial in which plaintiff appeared in the 1975 Christmas season was "without the written consent first obtained" of plaintiff. There being no consent at all as to the use in this time period, we hold that it was. As this court stated in *Adrian v Unterman* (281 App Div 81, 89), "The duration of that consent had expired * * * There was no general abandonment of the name by plaintiff". We note that our order in the *Adrian* case, reinstating a section 51 civil rights cause of action, was affirmed by the Court of Appeals (306 NY 771) after that court had considered the *Gautier* case.

Finally, defendant contends there is no ground to impose punitive damages in this case as there is no showing of morally culpable conduct or conduct actuated by evil or reprehensible motives. Such is the requisite showing to obtain punitive damages under the common law of this State. Here, however, the Legislature has modified the common-law standard by statute, as it may, particularly with respect to a "social[ly] exemplary 'remedy' " (*Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358). The statute permits punitive damages to be awarded in the discretion of the jury "if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article". Here, defendant was warned that the permissible period of use for the commercial had expired. Thus, the evidence was sufficient to support the factual conclusion that Mr. Christmas acted knowingly (*Cohen v Hallmark Cards,* 45 NY2d 493, 499). Of course, the amount of punitive damages awarded by the jury may be the subject of

review by the Appellate Division (see *Cohen v Hallmark Cards,* 70 AD2d 509). However, in this case, we cannot say that the judgment, already reduced to $15,000, is so excessive as to shock the conscience of this court.

Accordingly, the judgment of the Supreme Court, New York County (NADEL, J., upon jury verdict), entered January 19, 1981, which awarded plaintiff $1,000 compensatory damages and $15,000 punitive damages, plus costs and disbursements, and, order, Supreme Court, New York County (NADEL, J.), entered February 17, 1981, which granted reargument of defendant's CPLR 4404 (subd [a]) posttrial motion and adhered to the original determination, should be affirmed, with one bill of costs.

KUPFERMAN, J. P. (dissenting in part). I would modify to strike the punitive damage award. There is no dispute with the majority's factual analysis as far as it goes.

This is essentially a breach of contract claim. Obviously, as a matter of trial strategy, counsel for the plaintiff discontinued claims other than right of privacy, because only on the basis of section 51 of the Civil Rights Law would there even be the possibility of exemplary damages.

No specific damage having been shown nor economic value interfered with,[1] the only logical award was $1,000, being the equivalent of another option year possibility, exercised in fact if not by express provision.

The error of omission indicated in the majority opinion, in that the defendant "had made little or no effort to inform its local distributors of the expiration of the period of permissible use of the commercial," was certainly not egregious. In fact, one might even assume that with a $20 to $30 deposit to insure the return of the tape, the defendant was using a reasonable method of getting these tapes out of circulation.

There was no normal basis for punitive damages. There was no "intentional wrongdoing." (See *Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392, 400; *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 358; *Walker v Sheldon,* 10 NY2d 401, 406; *New Canaan Foreign Car Serv. v Blohm,* 85 AD2d 509; *Lovett v Allstate Ins. Co.,* 86 AD2d 545.)

---

1. See *Zacchini v Scripps-Howard Broadcasting Co.,* 433 US 562, 575-576.

Perhaps more interesting is the question of whether one who engages in the business of performing in commercials can claim a right of privacy (rather than a right of publicity)[2] when his picture is used as he originally consented in writing it could be used. The difference in use is not in scope but in time. However, in my view of the situation, it is unnecessary to reach that question.

BIRNS, SANDLER and FEIN, JJ., concur; KUPFERMAN, J. P., dissents in part in an opinion.

Judgment, Supreme Court, New York County, entered on January 19, 1981, and order of said court entered on February 17, 1981, affirmed. Respondent shall recover of appellant one bill of $75 costs and disbursements of these appeals.

---

[2]. See Sims, Right of Publicity: Survivability Reconsidered, 49 Fordham L Rev 453 *et seq.; Brinkley v Casablancas,* 80 AD2d 428.