[738 NYS2d 336]

ALINA HERNANDEZ et al., Respondents, v WYETH-AYERST LABO-
RATORIES, Appellant.

First Department, February 28, 2002

## APPEARANCES OF COUNSEL

*Edward C. Greenberg* of counsel (*Erica Galinski* and *Aimee Drexler* on the brief; *Greenberg & Reicher, LLP,* attorneys), for respondents.

*Steven E. Garry* of counsel (*Jay W. Pearlman* on the brief; *Costello, Shea & Gaffney LLP,* attorneys), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

The issues on this appeal from a judgment awarding plaintiffs compensatory and punitive damages for the use of their photographic images are whether defendant's use exceeded the bounds of plaintiffs' consent in violation of section 51 of the Civil Rights Law and, if so, whether the award of punitive damages is supported by evidence that defendant's use of the photographs was "knowing."

In the summer of 1993, defendant, a manufacturer and distributor of pharmaceutical products, decided to update the labeling and promotional materials for Stuartnatal, one of its vitamin product lines, by replacing the existing images with new ones for which new models had to be selected, and assigned Jeff Degenshein, an art director for its in-house advertising agency, 30 West Advertising, to the project. Degenshein selected a photographer, Fred Kenner, who chose plaintiffs, Alina Hernandez and Susee Kilbanks, represented by Mc-Donald/Richards modeling agency, and one other model for the photo shoot. Defendant's purchase order to Kenner memorialized their agreement and expressly provided, inter alia, that

the modeling fee included "buyout and unlimited usage." Each plaintiff signed a McDonald/Richards model voucher, which permitted use of the photographs for "1 year Brochure & Packaging" and stated, "This release takes precedence over any release signed at the time of job with exception of contracts and agency releases that contain the same information herein." Kilbanks's signature on the voucher is dated August 13, 1993, the date for which the photography session was originally scheduled, while Hernandez's signature and the photographer's signature on both the Kilbanks and Hernandez vouchers are dated August 17, 1993, the date on which the photography session actually took place.

On the date of the shoot, Kilbanks and Hernandez also each signed a "Consent and Release" form (release) authorizing use of their photographs "forever hereafter" in relation to "Stuart Natal—Label & Trade Ad." Hernandez added "per terms of model's voucher" to the release she signed. The invoice that Kenner, the photographer, submitted to defendant for his services included, at defendant's request,[1] a provision in which he agreed to hold defendant harmless against, inter alia, any claims for violation of statutory or common-law rights of privacy or publicity.

The images at issue were thereafter used in the packaging of defendant's nationally distributed prescription product, "Stuartnatal Vitamins," marketed in pharmacies, department stores and other retail stores, nationwide and beyond.[2] In a letter dated March 31, 1997, plaintiffs' counsel notified defendant that it had exceeded the terms of the model vouchers and requested defendant immediately to stop distributing any advertising or promotional materials with plaintiffs' images unless it had plaintiffs' signed consents authorizing such use. Immediately thereafter, defendant ceased printing the existing labels and photographed replacement models using their images on its labels and advertising. Concerned with alarming the public if a recall were ordered, defendant did not, however, remove the products with plaintiffs' images from the shelves. This action followed.

After a two-week trial, a jury awarded each plaintiff $12,000 in compensatory damages and $100,000 in punitive damages. Thereafter, defendant moved for a directed verdict or judgment

1. This was the first time in their dealings that defendant had requested such a provision.

2. Civil Rights Law § 51 provides a remedy for the unauthorized use only within the State of New York of a person's name, portrait or picture.

notwithstanding the verdict, which was denied. On defendant's motion for reargument, the court granted reargument to the extent of ordering a new trial on the issue of punitive damages unless each plaintiff agreed to accept $80,000 as such damages. Plaintiffs so stipulated.

■ Civil Rights Law § 51 provides, in pertinent part: "Any person whose name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as * * * provided [in Civil Rights Law § 50] may * * * sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden * * *, the jury, in its discretion, may award exemplary damages." Relying on the releases permitting the unlimited use of plaintiffs' images, defendant asserts that it satisfied its obligations under section 51. Defendant argues that its use of plaintiffs' images was authorized, despite the language in the model voucher that that instrument "takes precedence over any release signed at the time of job with exception of contracts and agency releases that contain the same information herein." We disagree. In our view, the voucher's limiting language renders the subsequent releases inoperative.

Defendant mistakenly relies on *Cory v Nintendo of Am.* (185 AD2d 70) to establish that the releases and not the model vouchers control. In *Cory*, the Court held that "Model Releases," which did not contain any time limitation on the use of the plaintiff's photographs and which were signed subsequent to the original model vouchers, were valid despite language in the original model vouchers that the photographs "may be used * * * only in the manner * * * specified above," i.e., for a period terminating in 12 months. The release in *Cory* was a valid one signed after the initial voucher, and the question was which release controlled. The Court stated that to the extent that the releases contradicted the vouchers executed at an earlier point in time, "the terms of the most recent release are controlling" (at 73). This, however, is not a case of valid releases, the terms of which contradict each other. Rather, what is involved here is a release, executed earlier in time, which contains clear and unmistakable language giving its terms precedence, subject to exceptions not here relevant, over any subsequent release executed at the time of the shoot. As plaintiffs point out, this precedence language is notably absent from the model voucher at issue in *Cory*, decided by this Court

in 1993, involving the same modeling agency, McDonald/ Richards. Apparently, the model voucher was thereafter modified to include the precedence language to avoid the problem encountered by the model in *Cory*.

Thus, in view of the provision in the model's vouchers that "[t]his release takes precedence over any release signed at the time of job with exception of contracts and agency releases that contain the same information herein," the releases involved here are inoperative and their authorization for use "forever hereafter" ineffectual. In any event, with respect to plaintiff Hernandez, her addition of the phrase "per terms of model's voucher" to the release makes it clear that her permission to use her photograph was restricted to the use permitted in the original model's voucher.

■ We agree with defendant, however, that the punitive damages award must be vacated. While the common-law standard for an award of punitive damages is a showing of morally culpable conduct or conduct actuated by evil or reprehensible motives (*Welch v Mr. Christmas*, 85 AD2d 74, 78, *affd* 57 NY2d 143; *Walker v Sheldon*, 10 NY2d 401, 404), in an action under Civil Rights Law § 51, the Legislature has modified the common-law standard to permit an award of punitive damages at the discretion of the jury "if the defendant shall have knowingly used such person's name, portrait, picture or voice in such manner as is forbidden or declared to be unlawful by section fifty of this article." (Civil Rights Law § 51; *see also, Welch v Mr. Christmas, supra*.) A showing of malice is not required (57 NY2d at 145); "no more need be shown than knowing use" (*id.* at 150).

Here, there was no direct evidence of defendant's knowing use of the images, and the circumstantial evidence relied upon was insufficient to support such a finding. Plaintiffs claim that knowledge of unauthorized use can be inferred from defendant's failure to follow normal business practices with respect to the photo shoot. Minor deviations from defendant's standard procedures in connection with the issuance of the purchase order and payment to the photographer of a "kill fee" because the original shoot was cancelled and rescheduled are not even remotely relevant to the question of defendant's knowledge.

Plaintiffs rely heavily on defendant's insistence that the photographer's invoice be revised to include specific language requiring the photographer to indemnify it against, inter alia, "any infringement of a copyright[,] * * * any violation of statutory or common-law rights of privacy or publicity[,] or * * *

any claim by an actor, model, etc., or any third party claim for compensation arising out of or related to the photography." Nothing in the record supports the claim that defendant "tailored the indemnification language to the foreseeable usage problems resulting from its failure to be provided with a valid voucher"; such claim is sheer speculation. It bears noting that the indemnity provision was added one year or more in advance of the complained of use of the images. And, of course, it is equally plausible that defendant was concerned about Kenner's potential unauthorized use of the images for his own benefit.

Finally, in order to justify the award for punitive damages, plaintiffs rely on the fact that defendant did not order an immediate recall of the products bearing their images already on the shelves and continued to allow the sale of these products after notification of its unauthorized use. While there is evidence that the products were sold after defendant received notice, there is no showing that defendant itself sold the products or made any other use of plaintiffs' images after that time. In fact, an employee of defendant's in-house advertising agency testified that although the products bearing plaintiffs' images were "still available through the pharmacy" in 1997, defendant was not "actively" promoting it, "[m]eaning the sales reps were not selling it." Moreover, in response to a question posed by plaintiffs' counsel, the same witness testified that plaintiffs did not request defendant to take the products off the shelves. And in summation, plaintiffs' counsel noted that "[t]here was no request that the package come off the shelf" and referred to the issue of taking the product off the shelf as "bogus."

We have examined the other issues raised by defendant and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Martin Schoenfeld, J.), entered August 16, 2001, against defendant and in favor of each plaintiff in the amount of $12,000 in compensatory damages and $80,000 in punitive damages, should be modified, on the law, to the extent of vacating the award for punitive damages and, except as thus modified, affirmed, without costs or disbursements. Appeals from a prior judgment, same court and Justice, entered December 19, 2000, awarding each plaintiff $12,000 and $100,000 in compensatory and punitive damages, respectively, and from prior orders, same court and Justice, entered May 18, 2001 and August 2, 2001, which, inter alia, directed a new trial on the issue of punitive damages unless plaintiffs agreed to a reduction of such damages to $80,000, should be dismissed, without

costs or disbursements, as subsumed in the appeal from the judgment entered August 16, 2001.

MAZZARELLI, J.P., SAXE, WALLACH and FRIEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered August 16, 2001, modified, on the law, to the extent of vacating the award for punitive damages and, except as thus modified, affirmed, without costs or disbursements. Appeal from a prior judgment, same court, entered December 19, 2000, and from prior orders, same court, entered May 18, 2001 and August 2, 2001, dismissed, without costs or disbursements, as subsumed in the appeal from the judgment entered August 16, 2001.