Robert NOLAN, Plaintiff,

v.

WILLIAMSON MUSIC, INC., and Sam
Fox Publishing Company, Inc.,
Defendants,

and

Hill & Range Songs, Inc., Joachim Jean
Aberbach and Julian J. Aberbach, Addi-
tional Defendants on Counterclaims.

No. 63 Civ. 2582.

United States District Court
S. D. New York.

July 1, 1969.

**1312**

Lewis A. Dreyer, by Ginsberg & Hack, New York City, for plaintiff; Norma Hack, and John Clark, New York City, of counsel.

Wattenberg & Wattenberg, by Philip B. Wattenberg, New York City, for defendant Williamson.

Thomas H. Baer, by Charles A. Stillman, New York City, for defendant Fox.

Abeles & Clark, New York City, for Hill & Range Songs and Aberbachs; John S. Clark and Robert C. Osterberg, New York City, of counsel.

EDELSTEIN, District Judge.

## OPINION

This action [1] was brought by Robert Nolan, the composer of a musical composition entitled "Tumbling Tumbleweeds," and tried before the court without a jury. The plaintiff seeks, first of all, a declaration that a July 11, 1934, publishing agreement and a March 1, 1960, assignment were rescinded on May 16, 1963, and the defendants have had no rights in and to the song since that date. Nolan also seeks:

(a) an injunction permanently enjoining defendants from asserting any rights in or to the song;

(b) a direction to defendants to execute such documents as may be necessary to effect, on the records of the Register of Copyrights, an assignment of the renewal copyright of the song;

(c) an accounting by defendants for all royalties which became due prior to the effective date of the rescission, and a direction that defendants make payment of the royalties found to be due;

(d) an injunction permanently enjoining defendants from infringing the copyrights of the song;

(e) damages and an accounting for profits resulting from defendants' infringement of plaintiff's copyright;

(f) a direction that defendants deliver up for destruction all infringing copies, plates, molds and other matter for making infringing copies; and,

(g) an allowance of reasonable attorneys' fees and an award of interest and costs.

---

1. The plaintiff alleged five causes of action in his complaint. The third cause of action was withdrawn.

The defendants, in addition to a denial of most of plaintiff's claims, have asserted the defense of laches and statute of limitations and have also asserted two counterclaims. The plaintiff and the additional defendants on counterclaims seek the dismissal of the counterclaims.

The jurisdiction of this court is predicated upon diversity of citizenship, the plaintiff being a citizen of California, and the defendants, Williamson Music, Inc., and Sam Fox Publishing Co., Inc., being respectively New York and Ohio corporations. The additional defendants on counterclaims, New York citizens, have been joined pursuant to an order granted by this court on a motion brought under Rule 13(h), F.R.Civ.P. In considering that motion the court ruled that the counterclaims are compulsory in nature and within the court's ancillary jurisdiction. The amount in controversy is in excess of $10,000.00, exclusive of interest and costs.

Plaintiff composed "Tumbling Tumbleweeds" in 1929, and, in an agreement dated April 3, 1934, he entered into a publishing agreement with one Harry Walker, doing business as Sunset Publishing Company. However, shortly thereafter, Nolan and Walker by mutual consent rescinded their agreement, and, together with one Harry Hall, joined in an assignment of the song and its copyright to the Sam Fox Publishing Company (Sam Fox).

The assignment to Sam Fox Publishing Company was dated July 11, 1934, and it provided, *inter alia*, that the "Composers" (defined as Nolan, Walker and Hall) conveyed to the "Publisher (defined as Sam Fox Publishing Company), its successors and assigns forever, all the right, title and interest of every kind, nature and description, including the copyright therein, throughout the world, of the Composers in 'Tumbling Tumbleweeds.'" This agreement also recites that it was the intention of the parties:

"to transfer to the Publisher all rights of every kind, nature and description (including the rights generally known in the field of literary and musical endeavor as the moral rights of the authors) throughout the world which the Composers have, own and possess in and to the said musical composition and no right of any kind, nature or description is [to be] reserved by the Composers."

The "Composers" also agreed to renew the copyright on the song and then to assign the renewal term to the "Publisher."

In consideration of these undertakings, the "Publisher" agreed to pay to the "Composers" royalties based upon a schedule the substance of which is as follows: (a) three cents for each pianoforte copy sold and paid for in the United States; (b) $33\frac{1}{3}$ percent of all royalties received by the "Publisher" for mechanical reproductions of the song in the United States and Canada; (c) $33\frac{1}{3}$ percent of all net sums received by the "Publisher" for the use of the song in the United States and Canada from "all other sources not specifically mentioned herein;" (d) $33\frac{1}{3}$ percent of all net sums received by the "Publisher" for the use of the song in motion pictures; and (e) $33\frac{1}{3}$ percent of the net income received by the "Publisher" from all foreign sources except from the use of the song in motion pictures. The "Publisher" generally was not obligated to pay royalties on copies of the song for which it was not paid, for reproductions included in folios, albums, books, or newspapers, nor for orchestrations. Additionally, the "Publisher" agreed to render semi-annual statements to the "Composers" and to accord to them the right to "inspect and audit the accounts of the Publisher at all reasonable hours."

Between 1934 and 1946 Sam Fox Publishing Company published and exploited "Tumbling Tumbleweeds." Subsequently, by an agreement dated January 28, 1946, Sam Fox assigned all of its right and interest in and to the song to defendant, Williamson Music, Inc., (Williamson) and agreed to use its best efforts to obtain the renewal copyright of

the song and then to assign the renewal term to Williamson. Williamson was obligated to reimburse Sam Fox for any bonus or advance that the latter was required to pay in order to obtain the renewal term, provided that Williamson first approved in writing the amount involved.

Under this agreement Williamson was to assume publication and exploitation of the song and to pay royalties to Sam Fox based upon the song's earnings. These royalties in general varied in different periods from 50 percent to 66⅔ percent of Williamson's gross receipts, except that fixed payments were provided for printed editions. Sam Fox also received at the outset an advance against future royalty payments in the amount of $17,500.00.

As between Williamson and Sam Fox, the latter continued to be obligated to pay all royalties payable under the July 11, 1934, contract and further agreed to indemnify and save Williamson harmless against any claims or demands made in connection therewith. Since 1946 Williamson has been responsible for the publication of "Tumbling Tumbleweeds" and has been paying royalties on the earnings thereon, first to Sam Fox and thereafter to its successor, defendant Sam Fox Publishing Company, Inc., (Fox) which was formed on or about December 24, 1952.

On March 1, 1960, the plaintiff executed a new assignment in favor of Fox of the renewal term of the copyright. In exchange for this assignment Fox agreed to pay $1500.00 to plaintiff and also agreed to modify the existing royalty arrangement so that plaintiff would now receive from Fox "two-thirds (⅔) of Fifty (50) percent of all royalties received by the publisher from any and all sources throughout the world for use of said composition, except the sale of sheet music. * * * "

In accordance with the terms of their 1946 agreement, Fox assigned the renewal term to Williamson, and Williamson then paid to Fox $1000.00 of the $1500.00 due plaintiff under his March 1, 1960, agreement with Fox. The renewal term of the copyright commenced on May 26, 1962.

To continue with the background facts of this case, for nineteen years, from 1930 to 1949, plaintiff was a member of a cowboy singing group called the "Sons of the Pioneers." During the period from 1939 or 1940 until the mid-nineteen forties this group employed one Edward M. Gray as its representative. Following the termination of Gray's employment by the "Sons of the Pioneers," plaintiff retained Gray to act as his personal business agent and he executed a power of attorney in Gray's favor. This relationship lasted until the early part of 1962.

Throughout those years plaintiff relied upon Gray for the handling of all of plaintiff's business affairs, including the collection of all income due him and the allotment to him of a weekly allowance. Plaintiff's account with Sam Fox (and later with defendant Sam Fox Publishing Company, Inc.) was maintained in Gray's name, royalty statements were sent to Gray, and checks for royalties due to plaintiff were drawn to Gray's order.

Plaintiff gave formal notice to Fox of the revocation of Gray's power of attorney in a letter dated February 19, 1962. The termination of Gray's agency, it would appear, was caused by plaintiff's discovery of breaches by Gray of his fiduciary duties. There was testimony that plaintiff, in fact, had recovered a judgment by default in California against Gray for approximately $40,000.00.

Plaintiff was represented in his suit against Gray by one Edythe Jacobs, a California attorney. During the course of the litigation against Gray, Miss Jacobs requested from Fox copies of the accountings that had been submitted by Fox to Gray on plaintiff's behalf. This request was refused on the ground that compliance, in the absence either of Gray's consent or a court order, might be construed as showing favoritism toward one or the other side.

Thereafter, in November of 1962, Miss Jacobs went to Fox's office in New York and requested to examine all of Fox's records relating to "Tumbling Tumbleweeds." This request was denied at first, but after Miss Jacobs consulted with Fox's attorney, she was permitted to examine Fox's records relating only to the years 1959 to 1961. At the time Miss Jacobs made her demand for inspection of the records, Fox was already aware both of the pending suit between plaintiff and Gray and of the claim of Hill & Range Songs, Inc. (Hill & Range)[2] to the renewal term of the coypright for "Tumbling Tumbleweeds."

Joachim Jean Aberbach and Julian J. Aberbach—additional defendants on the counterclaim—are officers and stockholders of Hill & Range. In 1946 Joachim Aberbach was involved in behalf of Chappell Music, Inc., a parent corporation to Williamson, in discussions relating to the assignment from Sam Fox to Williamson of the copyright for "Tumbling Tumbleweeds." Subsequently, in 1949, the Aberbach brothers and others formed Bob Nolan Music, Inc., of which plaintiff became president, and to which plaintiff assigned the renewal term of the "Tumbling Tumbleweeds" copyright. Bob Nolan Music, Inc., in turn, in May of 1956, assigned the renewal term to the Aberbach brothers individually. and they thereafter assigned the renewal term to Hill & Range.

Thus, in 1962, both Hill & Range and Fox and Williamson claimed control of the renewal term. Hill & Range, in fact, brought suit on its claim against Fox and Williamson, but this suit was discontinued without prejudice in 1963 after Nolan notified Hill & Range that he disputed their claim to the renewal term.

The instant action followed a letter dated May 29, 1963, which Nolan sent to Fox and Williamson seeking to terminate any and all agreements relating to "Tumbling Tumbleweeds" between Nolan and Fox.

The original agreement of 1934 between plaintiff and Sam Fox included Harry Hall and Harry Walker. No claim has been made in this suit that Hall's interest has survived. Walker's interest at the time of the attempted rescission was separately held by his heirs, but just prior to the trial of this case, plaintiff succeeded in obtaining an assignment from these heirs of any remaining interest which they held in the song.

The parties have thus had a long history of mutual dealings; and they have raised several claims each of which will be discussed separately.

The basic claim which plaintiff has urged in this suit is that he had the legal right to, and, in fact, did rescind his agreements with Fox by the May 29, 1963, notice. Plaintiff argues that rescission is justified in this case because over the years Fox has allegedly committed the following breaches: (1) non-payment of all royalties earned by foreign sources (this is conceded by Fox); (2) non-payment of the royalties due from domestic performing income; (3) non-payment of all of the royalties due on octavo editions of the song, electrical transcriptions, synchronizations, and on lyric uses of the song; (4) assignment of the copyright and its renewal term to Williamson; (5) payment of royalties by Fox based only on Fox's receipts from Williamson; (6) treating the $1500.00 given in consideration for the March 1, 1960, agreement to assign the renewal to Fox as an advance rather than as a bonus; and (7) denying plaintiff his contractual right to inspect on demand Fox's records. In addition to all of these, plaintiff argues that Fox has generally acted fraudulently towards plaintiff and that in particular it was fraudulent not to have revealed to plaintiff Fox's relationship with Williamson.

The court finds that it was not a breach of contract for Sam Fox to assign the copyright to Williamson. The 1934 transfer from plaintiff to Sam

2. Hill & Range Songs, Inc. is one of the additional defendants on the counterclaim.

Fox of "all rights of every kind, nature and description" which plaintiff had in the copyright was clearly absolute on its face. Furthermore, the agreement specifically provided that the conveyance was to the "Publisher, its successors and assigns." Whether a contract is assignable or not is, of course, a matter of contractual intent, and one must look to the language used by the parties to discern that intent. Clearly the language just quoted contemplated that the agreement was to be assignable. Williston on Contracts, § 423 (3rd ed. 1962).

The plaintiff, by citing Paige v. Faure, 229 N.Y. 114, 127 N.E. 898 (1920); Adrian v. Unterman, 281 App.Div. 81, 118 N.Y.S.2d 121 (1st Dept. 1952), aff'd mem. 306 N.Y. 771, 118 N.E.2d 477 (1954); and Nassau Hotel Co. v. Barnett & Barse Corp., 162 App.Div. 381, 147 N.Y.S. 283 (1st Dept.) aff'd mem. 212 N.Y. 568, 106 N.E. 1036 (1914), seems to be saying, however, that this contract involved such personal elements of trust and confidence that it was not assignable without the consent of the parties despite the clear language to the contrary. This argument, though, is not premised upon any reliable evidence adduced at the trial which would demonstrate that Nolan entered into his agreement with Fox because of any personal trust and confidence which he placed in Fox. Further, rescission of copyright exploitation agreements much like the one in issue in the case at bar was also sought in the case of In re Waterson, Berlin & Snyder Co. when the original assignee of the copyrights at issue there attempted to assign them to other publishers. The District Court, 36 F.2d 94 (S.D.N.Y.1929), granted rescission in that case on the ground that the agreements were not assignable because of the degree of personal trust involved in them. The Court of Appeals, In re Waterson, Berlin & Snyder Co. v. Irving Trust Co., 48 F.2d 704 (2d Cir. 1931), however, reversed that decision and held that the copyrights could be assigned further.

Plaintiff's assertions of fraud are based in part upon the allegation that Fox concealed from plaintiff its relationship with Williamson by never giving plaintiff actual notice of the assignment. The evidence, however, does not support a finding of fraud in this regard. It is true that Fox never gave plaintiff actual notice of the assignment, but the court has already held that the contract was assignable without Fox's first having to obtain the plaintiff's consent. Further, far from demonstrating an intent to conceal the assignment, the evidence shows that the defendants openly announced the fact of their arrangement in an advertisement placed in the trade newspaper "Variety" shortly after the assignment was made in 1946. Additionally, the assignment was registered in the Copyright Office and the Fox-Williamson relationship was noted on the copies of sheet music which were distributed.

In this regard it is also important to note that the evidence adduced at the trial indicates that plaintiff's agent Gray, while also acting in 1946 on behalf of a company called Pioneer Radio Productions, Inc., unrelated to Nolan, contracted with Williamson for the use of "Tumbling Tumbleweeds" on a commercial radio program. Gray thus had, at the least, notice that Williamson was publishing the song, and since Gray was plaintiff's authorized business agent in general and specifically acted as such with regard to "Tumbling Tumbleweeds," this notice is imputable to plaintiff. *See e. g.,* Farr v. Newman, 14 N.Y. 2d 183, 250 N.Y.S.2d 272, 199 N.E.2d 369, 4 A.L.R.3d 215 (1964).

The other part of plaintiff's claim of fraud is predicated upon the failure of Fox to render clearer and more detailed accountings to plaintiff and to pay him all of the royalties which were due him. Again, however, the reliable evidence fails to demonstrate fraud. Essentially what plaintiff is really complaining of here is mere breaches of contract by Fox; fraud consists of something more than the mere breach of a contract. *See* Adams v. Gillig, 199 N.Y. 314, 92 N.E. 670 (1910); Pocono Fores-

try Corp. v. Price, 273 App.Div. 812, 75 N.Y.S.2d 735 (2d Dept. 1948); Shields v. New York Oil Burner Co., Inc., 262 App.Div. 854, 28 N.Y.S.2d 104 (2d Dept. 1941).

Plaintiff's complaint with regard to the breach of his right to inspect Fox's records is based upon what allegedly occurred at the time of Miss Jacobs' visit in 1962 to Fox's office. The record is clear that until that time plaintiff had not attempted to exercise his right of inspection. Moreover, as has already been noted, at the time Miss Jacobs made her demand to see Fox's records, Fox had notice both of the pending suit between plaintiff and Gray and of the asserted claim of Hill & Range to the renewal term of the copyright. The limitations which Fox imposed on the records which were made available to Miss Jacobs must be considered in the light of these facts. This was not a case in which the defendant completely and unjustifiably denied the plaintiff his right to inspect records as was the case in Raftery v. World Film Corp., 180 App.Div. 475, 167 N.Y.S. 1027 (1st Dept. 1917).

The remaining breaches claimed by the plaintiff will be discussed in more detail later. But the question to be resolved at this juncture is whether these breaches, when considered together, provide a sufficient basis for rescission.

█ It is accepted law that not every breach of a contract will justify rescission. Rather, rescission can be permitted only when the complaining party has suffered breaches of so material and substantial a nature that they affect the very essence of the contract and serve to defeat the object of the parties. *E. g.,* Callanan v. Powers, 199 N.Y. 268, 92 N.E. 747 (1910); O'Herron v. Southern Tier Stores, Inc., 9 A.D.2d 568, 189 N.Y.S.2d 323 (3rd Dept. 1959).

Cases which have considered the problem of rescission in situations analagous to the one presented by the case at bar have granted rescission only after finding the equivalent of a total failure in the performance of the contract. In Raf-

tery v. World Film Corp., *supra,* the plaintiff temporarily turned over to the defendant prints from which movies were to be made and then distributed. The contract provided that the defendant was to render weekly accounts of the earnings on the movies and to pay the plaintiff fifty percent thereof. The prints were to be returned at the expiration of the contract term. The court found that the defendant never paid plaintiff the full amount due, deliberately maintained a set of fictitious records, deliberately rendered false accountings, refused to permit inspection of the records as was required by the contract, and failed to return the prints to the plaintiff. Based on all of these factors rescission was granted. In Driver-Harris Co. v. Industrial Furnace Corp., 12 F.Supp. 918 (W.D.N.Y.1935) suit for rescission of a patent licensing agreement was permitted upon a claim that no royalties had been paid for a long period and that the patent was not being exploited. Rescission was also granted in Oscar Barnett Foundry Co. v. Crowe, 219 F. 450 (3rd Cir. 1915) upon a finding that all royalty payments had ceased and that the patent was no longer being exploited. *Accord,* Ruby v. Ebsary Gypsum Co., 36 F.2d 244 (W.D.N.Y. 1929). And finally in De Mille Co. v. Casey, 115 Misc. 646, 189 N.Y.S. 275 (Sup.Ct. 1921), a contract permitting the defendant to produce motion pictures based on plaintiff's plays was rescinded when royalty payments ceased and the defendant, because of various sublicensing agreements over which he had lost effective control, was no longer in a position to comply with the contract and to protect the plaintiff's future interests.

█ Rescission is not justified in this case. The fact that fraud has not been established has already been discussed. Although defendant has been guilty of divers breaches, these breaches involve a failure to comply fully with the contractual provisions for payment of royalties in various categories, and as to these breaches, it is clear to the court that plaintiff may be rendered

whole by an award of monetary damages. Moreover, there seems little danger that Nolan will be deprived of his royalties in the future. This is not a case in which defendant has repudiated his obligation to pay royalties, nor is this a case in which plaintiff's song has not been exploited fully in the past or threatened with not being exploited fully in the future.

Thus, plaintiff is not entitled to rescission. Accordingly, all the attendant remedies must also fail.

The court will now turn to the cause of action for an accounting. Plaintiff alleges that royalties due him have been withheld in whole or in part in the following categories: foreign mechanical earnings, synchronization fees, electrical transcriptions, printed editions (including octavo and band) other than pianoforte copies, and royalties received from foreign and domestic performing rights societies.

Defendant admits in part and denies in part that such royalties are in fact due and owing. He raises divers defenses to each of the categories except for payment of royalties based upon foreign mechanical income. Defendant claims that the non-payment of these royalties was inadvertent, that defendant stands ready to pay these amounts and that for this single purpose he waives the defense of laches and the statute of limitations.

To the remaining extent that defendant failed to pay monies in any of the abovementioned categories, it argues that plaintiff is not entitled to receive them. The defendant maintains that these items represent either monies received from the American Society of Composers, Authors & Publishers (hereinafter ASCAP), or monies retained by Williamson pursuant to the 1946 Fox-Williamson assignment. Each defense will be separately treated.

■ (a) The ASCAP defense—defendant argues that those monies it received from ASCAP (as a publisher) are exempt from royalty payments because if Nolan had joined ASCAP (he at no time was a member), then he, Nolan, would have received payments directly from ASCAP. Be that as it may, that contingency in no way diminishes the pungency or the lucidity of the words of the 1934 contract between Fox and Nolan: "(Fox agrees to pay Nolan) * * (5) (c) 33⅓% of all net sums or moneys received by the Publisher for use of the said musical composition in the United States and Canada from *all other sources not specifically mentioned* herein." (emphasis added) (Subsequently the amount was increased to ⅔ of 50% of all royalties received from all sources throughout the world via the 1960 assignment.).

The plain words of this contract lead to the conclusion that Fox was obligated to pay royalties on its ASCAP earnings. Fox did urge that there is a custom or practice in the industry to exclude performing society payments, but the testimony on this score was woefully inadequate. In any event, if the parties in 1934 or 1960 had intended to exempt performing society payments, they could easily have added it to the list of exclusions cited in page 5 of the contract.[3] Accordingly, this defense must fail.

■ (b) The Williamson share defense. Plaintiff maintains that he is entitled to royalties based on all earnings of "Tumbling Tumbleweeds" and not just those which are based on Williamson's payments to Fox; (i. e., Fox's receipts). Fox insists that the 1934 contract envisioned payments to Nolan

---

3. Par. Five of the 1934 contract reads, in relevant part, as follows:
 "It is agreed that the Publisher shall not be obligated to pay, nor shall the Composers be entitled to receive royalties on the following:
 (1) Complimentary copies;
 (2) Copies sold but not paid for;
 (3) Copies sold and returned to the Publisher;
 (4) Copies given away as new issues or for advertising purposes;
 (5) Professional copies;
 (6) Copies included in folios, albums, books or published in newspapers;
 (7) Orchestrations."

based exclusively on receipts of Fox. Again, defendant's objection must fail.

*Ab initio* the contract refers to "[T]he Publisher [paying] the Composers," and it is undisputed that Williamson is the *de facto* publisher of the composition. Although in the preamble [4] to the 1934 contract the "Publisher" is referred to as the Sam Fox Publishing Company, the third paragraph [5] of the document speaks of the "Publisher, its successors and assigns." That this is the intended definition of the word "Publisher" is clear when it is considered that the original publisher, Sam Fox Publishing Company, dissolved subsequent to the execution of the 1934 contract and the Sam Fox Publishing Co., Inc., then was organized as the successor to the partnership. Taking defendant's argument to its extreme, it would argue that only the Sam Fox Publishing Company was liable for the payment of royalties to Nolan and that the corporate entity was absolved because it was not the "Publisher" as that word was used in the preamble. To avoid this impossible situation—which even the defendant does not urge—it is necessary to define "Publisher" with reference to Par. 3, *i. e.,* as Sam Fox Publishing Company, Sam Fox Publishing Company, Incorporated, (a successor) and Williamson Music, Inc. (an assign). As a result Williamson is the publisher insofar as that term is used to decide the basis on which royalties are to be determined.[6] The court therefore finds that it was a breach of the 1934 Nolan-Fox agreement for Fox, when accounting to Nolan for the royalties due to him, to have excluded the share of the earnings on "Tumbling Tumbleweeds" retained by Williamson. If the court were to conclude otherwise, plaintiff's interest could be endlessly diluted by successive assignments.

Nolan also demands a share of the $17,500.00 which Fox received as an "advance against royalties" from Williamson for the assignment of the song from Fox to Williamson. To the extent that the $17,500.00 was applied against the royalties which Williamson paid to Fox, then to that extent, and only to that extent, is Nolan entitled to royalties based on the $17,500.00.

Still another area of dispute between Nolan and Fox involves the $1500.00 that Fox gave to Nolan in 1960 in connection with the assignment of the renewal term. Fox argues that the $1500.00 was an advance against future royalties, and, indeed, it treated it as such in its accountings to Nolan. Nolan, on the other hand, claims that the $1500.00 was a bonus, and charges that Fox's treatment of this item as an advance was a fraud.

Fox was clearly wrong in treating the $1500.00 as an advance instead of as a bonus. The assignment reveals no intent on the part of the parties that this $1500.00 was to be treated as an advance. Rather, the plain and straightforward language of the assignment leaves no doubt that the $1500.00 was intended to be an outright consideration.

4. The preamble reads as follows: "THIS AGREEMENT, made and entered into this 11th day of July, 1934, by and between SAM FOX PUBLISHING COMPANY, a co-partnership consisting of Sam Fox and Harry Fox, having its offices at The Arcade, Cleveland, Ohio, and at 158 West 45th Street, New York City, party of the first part, hereinafter referred to as 'PUBLISHER' and HARRY WALKER, BOB NOLAN and HARRY HALL, parties of the second part, hereinafter referred to as 'Composer.'"

5. Par. 3 reads in relevant part as follows: "THIRD: The Composers hereby sell, convey, assign and deliver to the Publisher, its successors and assigns forever, all the right, title and interest of every kind * * *"

6. The 1960 renewal contract follows this approach: [" * * * in * * * consideration of the Sam Fox Publishing Co., Inc., as successor and assignee of (the partnership) * * * agreeing to modify * * * Paragraph 5 * * * as follows: Bob Nolan * * * shall receive * * * of all royalties received by the publisher"].

Moreover, the matter of the consideration in the 1960 contract probably should be viewed more as having been motivated by Fisher Music Co. v. M. Witmark & Sons, 318 U.S. 643, 63 S.Ct. 773, 87 L.Ed. 1055 (1943) [7] then by any generosity towards Nolan. Fox's flaunting of the clear meaning of the assignment does not reflect favorably on it, but its action in so doing does not constitute a fraud.

Finally, defendants rely on the defenses of laches and the statute of limitations to defeat Nolan's claim. The defense of laches is so insubstantial as to merit no comment beyond stating that defendants have failed completely to show that the plaintiff was wanting in due diligence in discovering and pressing his claims, or, for that matter, that the defendant suffered any prejudice whatever.

 The statute of limitations defense, however, has merit. The New York statute of limitations for an action based on breach of contract or mistake is six years from the breach. C.P.L.R. § 213. Although plaintiff attempts to bring his claim within the limitation provision for actions based on fraud,[8] (six years from date of discovery), he has failed to prove fraud. Oversight, negligence and less than meticulous bookkeeping do not amount to fraud, and a mere allegation of fraud is insufficient to bring the fraud provision of § 213 into play. Braunwarth v. Wellington, 48 N.Y.S.2d 159 (Sup.Ct. 1943), aff'd 269 A.D. 747, 55 N.Y.S.2d 116 (1st Dept. 1945), aff'd 272 A.D. 878, 72 N.Y.S.2d 406 (1st Dept. 1947).

## COUNTERCLAIMS

As to the counterclaims, the major issues are whether plaintiff was induced to breach his contract with Fox and whether Fox's and Williamson's right to exploit the song have been interfered with by plaintiff and the additional defendants on the counterclaims.

 The first counterclaim alleges a conspiracy between Nolan and the Aberbachs to induce plaintiff to breach the 1934 contract with Fox. This claim must fail. One contracting party (Fox) does not have a cause of action against the other (Nolan) for conspiring to breach the contract or for inducing the breach.[9] The defendants have only succeeded in showing that Nolan and the Aberbachs do not deserve a good conduct medal for their dealings with each other regarding the song's renewal rights, but defendants have failed, nevertheless, to show by a preponderance of the credible evidence that the additional defendants on the counterclaim induced plaintiff to breach his contract with Fox. In any event, there has been a complete failure to prove any damages resulting from the alleged inducement to breach. Corris v. White, 29 A.D.2d 470, 289 N.Y.S.2d 371 (4th Dept. 1968).

The second counterclaim, an amalgamation of prima facie tort, slander of title and intentional injury, is unsupported by a preponderance of the credible evidence. Moreover, as no allegation—much less proof—of special damage is alleged, this claim must be dismissed. See Carnival Co. v. M.G.M., Inc., 23 A.D. 2d 75, 258 N.Y.S.2d 110 (1st Dept. 1965); Danko v. F. W. Woolworth Co., 29 A.D.2d 855, 288 N.Y.S.2d 509 (1st Dept. 1968); Glaser v. Kaplan, 5 A.D. 2d 829, 170 N.Y.S.2d 522 (2d Dept. 1958).

It is the judgment of this court that plaintiff's agreements with Fox are not rescinded. Plaintiff is entitled to the payment of royalties due him under his 1934 and 1960 agreements with Fox and the court directs an accounting limited

---

7. That case indicated that an author might challenge the validity of his assignment of his interest in the renewal rights if the original consideration for the assignment was inadequate.

8. C.P.L.R. §§ 213, 206(c).

9. E. g., Warner Bros. Pictures, Inc. v. Simon, 21 A.D.2d 863, 251 N.Y.S.2d 70 (1st Dept. 1964) aff'd. mem. 15 N.Y.2d 836, 257 N.Y.S.2d 947, 205 N.E.2d 869 (1965); Cuker Industries, Inc. v. William L. Crow Constr. Co., 6 A.D.2d 415, 178 N.Y.S.2d 777 (1st Dept. 1958).

to the period commencing six years prior to the commencement of this action, except that this six-year limitation does not apply to the money due plaintiff for royalties derived from foreign mechanical income. The counterclaims alleged by the defendants are dismissed.

The above constitutes the required findings of fact and conclusions of law.

Settle an order within seven (7) days.