Robert NOLAN, Plaintiff-Appellant and Cross-Appellee,

v.

SAM FOX PUBLISHING COMPANY, INC., Defendant-Appellee and Cross-Appellant,

and

Williamson Music, Inc., Defendant,

and

Hill & Range Songs, Inc., et al., Defendants on Counterclaims and Cross-Appellees.

Nos. 68, 349, Dockets 73-1077, 73-1187.

United States Court of Appeals, Second Circuit.

Argued Nov. 8, 1973.

Decided July 8, 1974.

---

12. *Cf.* discussion in The Bremen et al. v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), where the Court held that a forum-selection clause was binding upon the parties unless the respondent could meet the heavy burden of showing that its enforcement would be unreasonable, unfair or unjust.

13. But see Continental Grain Co. v. Dant & Russell, Inc., 118 F.2d 967 (9th Cir. 1941).

14. We note that had Econo-Car brought this suit initially in a district court in New York, such court, it appears, would view the agreement to arbitrate in New York as a waiver of any possible objections Antilles might make to the court's venue. *See id.* Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc., 334 F.Supp. 1013, 1021 (S.D.N.Y.1071); Lawn v. Franklin, 328 F.Supp. 791, 793-794 (S.D.N.Y. 1971).

forth the facts in this diversity of citizenship case, and we find no need to restate them here in any great detail. The main thrust of the arguments by both parties on appeal goes to the conclusions drawn from those facts by Chief Judge Edelstein.

Robert Nolan composed the song "Tumbling Tumbleweeds" (the "song") in 1929, and thereafter assigned the song and the copyright on it to the Sam Fox Publishing Co. ("Fox"). Subsequently, in an agreement dated January 28, 1946, Fox in turn assigned all of its right and interest in and to the song to Williamson Music, Inc. ("Williamson"). On March 1, 1960, the plaintiff assigned the renewal term of the copyright to Fox which then assigned that renewal term, as it had all its previous rights and interests in the song, to Williamson.

In 1963 plaintiff Nolan sought to rescind the assignment to Fox of the original and renewal copyright on the musical composition. The plaintiff also sought injunctive relief protecting his claimed interest in the song. He sought the return of the copyright renewal, an accounting for royalties, and damages for alleged infringement of the copyright. He stated he had rescinded all his contractual arrangements with Fox and sought a judicial declaration confirming the rescission. Although Chief Judge Edelstein found divers breaches of the contract by Fox he found that none of them were substantial enough or were so material as to justify rescission by Nolan, maintaining that Nolan could "be rendered whole by an award of monetary damages." 300 F.Supp. at 1317–1318. As Chief Judge Edelstein viewed the suit as being one based upon breach of contract he ordered an accounting by a Special Master to determine the amount of damages Nolan should recover for such a breach, which damages consisted principally of past royalty payments owed by Fox to Nolan. He applied the six-year applicable statute of limitations, N.Y. C.P.L.R. § 213, subd. 2, governing actions for breach of contract. This had the effect here of

Edythe Jacobs, Los Angeles, Calif., Norma Hack, Ginsberg & Hack, New York City, for Nolan.

Charles A. Stillman, Julian W. Friedman, Morrison, Paul, Stillman, & Beiley, New York City, for Fox.

Robert C. Osterberg, John S. Clark, Abeles, Clark & Osterberg, New York City, for Cross-Appellees.

Before WATERMAN, FRIENDLY and TIMBERS, Circuit Judges.

WATERMAN, Circuit Judge:

These are cross-appeals by the plaintiff Nolan and one of the defendants below, Sam Fox Publishing Company, from a judgment of the United States District Court for the Southern District of New York, David N. Edelstein, *Chief Judge*, entered after a trial by the court without a jury. In his opinion, reported at 300 F.Supp. 1311 (SDNY 1969), Chief Judge Edelstein has clearly set

limiting the potential recovery to only those damages alleged to have accrued in the six years prior to the commencement of the action in 1963. The defendant Fox waived the statute of limitations defense, however, with reference to one category of royalty payments claimed to be due from Fox, those for royalties from foreign mechanical income.

After the Special Master had issued his findings of fact, the court below determined that Fox was liable to Nolan in the amount of $94,148, including interest and taxable costs. This figure included royalties on money earned by Williamson but not paid over to Fox. The findings of the Special Master and the Memorandum Opinion of September 26, 1972 by Chief Judge Edelstein affirming the Master's findings are not reported. The plaintiff appeals from the judgment insofar as it denied him the other and additional relief he sought.

The defendant Sam Fox Publishing Company, Inc. cross-appeals from that part of the judgment granting Nolan an accounting and computing the award of damages. Fox also appeals from the dismissal of its compulsory · counterclaims, found to be without substance, claims which it had originally made against the plaintiff Nolan [1] and several additional parties, Hill & Range Songs, Inc. ("Hill") and Joachim Jean Aberbach and Julian J. Aberbach, who were defendants on those counterclaims.

The first counterclaim alleged that the counterclaim defendants had induced Nolan to breach his contract with Fox and the second counterclaim charged that these defendants, together with Nolan, had intentionally damaged Fox's business.

■ We now turn to our discussion of the merits of the appeals. All parties to this action agree that rescission of a contract is an extraordinary remedy which should not be granted whenever there is only an inconsequential breach of the contract. Rather, before rescission will be permitted the breach must be found to be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties ·in making the contract." Callanan v. Powers, 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910). See also In re Waterson, Berlin & Snyder Co., 48 F.2d 704 (2 Cir. 1931) (A. N. Hand, J.); United States Plywood Corp. v. Hudson Lumber Co., 113 F.Supp. 529 (SDNY 1953); Rosenwasser v. Blyn Shoes, Inc., 246 N.Y. 340, 159 N.E. 84 (1927); O'Herron v. Southern Tier Stores, Inc., 9 A.D.2d 568, 189 N.Y.S.2d 323 (3d Dep't 1959).

■ A showing of fraud would certainly be grounds for rescission. Adams v. Gillig, 199 N.Y. 314, 92 N.E. 670 (1910). It is plaintiff Nolan's contention here that the facts presented below demonstrate the existence of fraud, and that Chief Judge Edelstein erred in his conclusion that they do not. Nolan's principal claim of fraud is that Fox's relationship with Williamson was fraudulently concealed from the plaintiff. In support of this claim Nolan relies on the facts that he was never given actual notice of Fox's assignment of the copyright to Williamson, and that he was totally ignorant of the arrangement whereby Fox would turn over the copyright renewal to Williamson. Nevertheless, these facts do not demonstrate that fraud existed. Fox had the right to assign the copyright, In re Waterson, Berlin & Snyder Co., *supra,* and Chief Judge Edelstein was unable to discern any effort by either Fox or Williamson to conceal their relationship from Nolan. We therefore do not believe that Chief Judge Edelstein was clearly erroneous in

---

[1.] At suit "Fox" is a corporation. In 1934 it was a co-partnership, in 1960 a corporation. We see no need to differentiate between the co-partnership and its successor corporation.

In its brief in the Court of Appeals Fox appears to have dropped its appeal from the district court's dismissal as to Nolan of the first counterclaim. The court held it improper to join Nolan as a defendant on this first counterclaim with other counterclaim defendants whom Fox claims induced Nolan to break his contract with Fox.

finding that "the reliable evidence fails to demonstrate fraud." 300 F.Supp. at 1316.

■■ In 1946, an advertisement appeared in the widely circulated trade newspaper *Variety* stating:

Important
Announcement!
WILLIAMSON MUSIC, INC.
By special arrangement with
SAM FOX PUBLISHING COMPANY
Have Acquired The
SENSATIONAL WESTERN SONG
TUMBLING
TUMBLEWEEDS
By BOB NOLAN

This public announcement is, of course, patently inconsistent with the theory that Fox and Williamson were intent on concealing their relationship. Moreover, Williamson's name was displayed on all the sheet music copies of the song published by it. Nolan argues, however, that nowhere in the *Variety* announcement or on the sheet music was Williamson identified as the "publisher." This omission, in and of itself, surely would not demonstrate fraud. In addition, it is significant that the assignment from Fox to Williamson was recorded at the Copyright Office. Inasmuch as that assignment was recorded, we need not even reach the question of whether Nolan can be charged with knowledge of the assignment because of that recording, for it suffices to say here that this recordation further illustrates that Williamson and Fox had no intention whatsoever of concealing their relationship from Nolan or from anyone else.

■ Although Nolan might not have had actual knowledge of Williamson's role, there was evidence at the trial below that Nolan's longtime authorized business agent and attorney, Edward Gray, whose role in this whole matter is of the utmost importance, did have actual knowledge that Williamson was publishing the song. Gray handled all of Nolan's business affairs and was spe-

cifically authorized to act as Nolan's agent for Tumbling Tumbleweeds from the mid-nineteen forties until his dismissal by Nolan in 1962. Nolan's account with Fox was maintained in his, Gray's, name, royalty statements were sent by Fox to Gray, and the royalty checks were drawn to Gray's order. In 1946, Gray, who was then Nolan's business agent, negotiated with Williamson Music for use of the song "Tumbling Tumbleweeds," but he was then acting on behalf of Pioneer Radio Productions, Inc., a corporation with which Nolan had no connection whatever. It was at this point that Gray acquired knowledge that Williamson and not Fox was exploiting the song. Although, as we have mentioned, Gray was not acting on behalf of Nolan when he was representing Pioneer Radio, he was Nolan's agent with regard to the song. It is unimportant what Gray actually did or did not tell Nolan about the knowledge Gray obtained. Whatever knowledge Gray had is imputed to Nolan. Farr v. Newman, 14 N.Y.2d 183, 250 N.Y.S.2d 272, 199 N.E.2d 369 (1964); Bonham v. Coe, 249 App.Div. 428, 292 N.Y.S. 423 (4th Dep't), aff'd, 276 N.Y. 540, 12 N.E.2d 566 (1937); Hurley v. John Hancock Mut. Life Ins. Co., 247 App.Div. 547, 288 N.Y.S. 199 (4th Dep't 1936).

■ In addition to his claim that there was fraud, plaintiff Nolan argues that Fox's failure to pay a substantial percentage of the royalties later determined to be owing to him by the Special Master is such a substantial breach of the contract by Fox as to justify rescission by Nolan. Nolan did not receive 74% of the royalties due him for the applicable six-year period from 1957 until 1963. Fox failed to pay any royalties on income from foreign sources, royalties on income from licensing of the song for public performances, and royalties on income from printed material other than piano copies. At the trial below, Fox advanced several defenses that it argued relieved it of the obligation to pay these royalties. The court found that, with the exception of the statute of limita-

tions claim, cutting off liability for failure to pay any royalties due prior to 1957, all the defenses raised were without merit. Chief Judge Edelstein attributed Fox's failure to pay to "[o]versight, negligence and less than meticulous bookkeeping. . . ." 300 F.Supp. at 1320.

■ Although the existence of fraud is a sufficient ground for permitting rescission it is not a necessary one. Rescission has also been allowed, despite the absence of any showing of fraud, in cases in which a publisher has made none of the royalty payments. The rationale of these decisions is, of course, that an essential objective of a contract between a composer and publisher is the payment of royalties, and a complete failure to pay means this objective has not been achieved. Here, however, Fox did pay 26% of the royalties due to Nolan for the applicable six-year period, and this partial payment of royalties due distinguishes this case from cases where there was total failure to pay the required royalties. See Driver-Harris Co. v. Industrial Furnace Corp., 12 F. Supp. 918 (WDNY 1935); Broadcast Music, Inc. v. Taylor, 10 Misc.2d 9, 55 N.Y.S.2d 94 (Sup.Ct.1945); DeMille Co. v. Casey, 115 Misc. 646, 189 N.Y.S. 275 (Sup.Ct.1921).

■ In defending against the cause of action for an accounting Fox admitted failure to pay royalties due Nolan from "foreign mechanical income." As to the other categories of income for which royalty payments were claimed to be owing to Nolan, however, Fox denied any liability and defended on two grounds. First, Fox asserted that any moneys received by Fox from the American Society of Composers, Authors, and Publishers (ASCAP) were exempt from royalty payments because Nolan would have received these payments directly from ASCAP had he been a member of that organization. In rejecting this defense, Chief Judge Edelstein first relied on the plain language of the contract between Nolan and Fox providing for the payment of royalties on all

sources of income not specifically excluded by the contract. Fox had argued that the language of this contract must be read in light of the custom in the trade that these payments were exempt from the obligation to pay royalties. Yet Chief Judge Edelstein found that the evidence on this point presented by Fox was "woefully inadequate." 300 F. Supp. at 1318. No evidence in the record on appeal suggests that we find differently.

■ The second defense offered by Fox to prove that Nolan had received all royalties properly due him, other than those for foreign mechanical income, was that Nolan was not entitled to royalties from Fox on money which was earned by Williamson but not paid over to Fox. In finding the defense without merit, Chief Judge Edelstein relied on the language of the contract and his interpretation of the word "publisher" to cover assignee Williamson. Fox had argued that "publisher" did not include Williamson. That this argument is disingenuous is shown by Fox's admission that the term covers both the partnership of Sam Fox Publishing Company, and its successor, the Sam Fox Publishing Company, Inc. Furthermore, under the interpretation of the contract suggested by Fox, continual dilution of earnings payable to Nolan could be achieved through successive assignments. Our construction of the contract does not reform the agreement in any way, but is more likely in keeping with the intentions of the parties than is Fox's reading.

■ The court below found that as between Fox and Williamson, only the former would be held liable to Nolan. Chief Judge Edelstein carefully examined the assignment from Fox to Williamson and found that it provided for Fox to pay all the royalties. Nolan argues that this court should impose an equitable lien on the copyright so that Williamson can be held liable to Nolan in the future if Fox should be unable to make payments. For authority, Nolan relies on In re Waterson, Berlin & Sny-

der Co., *supra,* where this court imposed such a lien when the assignor publisher was, in fact, bankrupt. In *In re Waterson,* however, the trustee for the bankrupt publisher wished to sell the copyright free of any royalty claims. This effort to repudiate the obligation to pay royalties is not present in the instant case. Fox has consistently paid some royalties to Nolan, and Williamson has made some royalty payments to Fox. The court in *In re Waterson* faced a much different situation from that which is now before us, and the *Waterson* case has not been extended to cases like the present one where the publisher is not bankrupt. To impose a lien on the copyright when Nolan's contract with Fox imposes no restriction on assignability of the copyright is a drastic remedy not required by the facts in the present case.

█ Because he treated this case as one for breach of contract, Chief Judge Edelstein applied a six-year statute of limitations so as to cut off all liability for any payments allegedly owed from before 1957. See N.Y.C.P.L.R. § 213, subd. 2. Inasmuch as we discern no basis for disturbing the district court's finding that there was no fraud, this statute of limitations applicable to actions in contract must therefore be the applicable statute unless we accept one of the other theories offered by the plaintiff Nolan to support his position that this six-year limitation provision should not be invoked here. Nolan argues that the statute of limitations pertaining to actions in contract should not apply here, for the relationship of a writer or composer to his publisher is one of trust, that here there has been not only a breach of contractual relationship but a breach of fiduciary duty, as well, and therefore we should hold that Nolan's cause of action for *any* of the royalty payments allegedly withheld by Fox at any time accrued only upon Nolan's discovery of all the facts which

he claims Fox had concealed from him until shortly before his declaration of rescission. It is true that several New York courts have mentioned the trust elements that are part of the relationship between a writer and a publisher. See Nelson v. Mills Music, Inc., 278 App. Div. 311, 104 N.Y.S.2d 605 (1st Dep't 1951); Schisgall v. Fairchild Publications, Inc., 207 Misc. 224, 137 N.Y.S.2d 312 (Sup.Ct.1955); Broadcast Music, Inc. v. Taylor, *supra.* None of these cases, however, are concerned with the statute of limitations question. Rather, these cases involve only the question of what effect the relationship between the composer or writer and the publisher has on the publisher's acknowledged obligation to exploit the copyright. In the present case Chief Judge Edelstein found that in the past there had been no failure by Fox to exploit the copyright, and it was unlikely that there would be a failure to do so in the future. Thus, exploitation of the copyright not being at issue here, the cases cited by Nolan are inapposite.

On appeal, defendant Fox has dropped the plaintiff Nolan as a party to the counterclaims, but the allegations and claims for relief against Hill and the Aberbachs are the same as those raised in the district court. The counterclaim for inducing breach of contract was dismissed as against Nolan by Judge Edelstein below because such an action could not properly be maintained by Fox against Nolan, and dismissed as to the other counterclaim defendants because of a complete failure to prove damages, an essential element of a cause of action for inducing breach of contract. In the second counterclaim alleging the intentional infliction of damage to Fox's business, Fox's failure to prove damages was also one reason for dismissal. We find nothing to indicate that Judge Edelstein ruled incorrectly on either counterclaim.

Affirmed.