**AFFILIATED HOSPITAL PRODUCTS, INC., Appellant,**

v.

**MERDEL GAME MANUFACTURING COMPANY et al., Appellees.**

**No. 236, Docket 74–1171.**

United States Court of Appeals, Second Circuit.

Argued Jan. 15, 1975.

Decided March 31, 1975.

William D. Durkee, Arnold, White & Durkee, Houston, Tex., Alan T. Bowes, Kenyon & Kenyon, Reilly, Carr & Chapin, New York City, for appellant.

John D. Tully, Warner, Norcross & Judd, Grand Rapids, Mich., Robert E. Wagenfeld, Staten Island, N. Y., for appellees.

Before WATERMAN, FRIENDLY and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

Affiliated Hospital Products, Inc. (Affiliated) filed an amended complaint on January 23, 1970 in the United States District Court for the Southern District of New York seeking damages for alleged unfair competition and breaches of contract, for rescission of a court-filed stipulation, for an accounting, for the delivery and destruction of the alleged offending materials, and for permanent injunctive relief. Affiliated alleged that the defendants had injured it in various ways: (1) by breach of contract govern-

ing the respective uses of the parties in the words Carom and Caroms and Carrom and Carroms; (2) by infringement of Affiliated's trademark Carrom; (3) by infringement of Affiliated's trademark Kik-it; (4) by infringement of Affiliated's copyright of a rulebook for Carroms and for other games played on its gameboard; and (5) for unfair competition. On January 23, 1970 Merdel Game Manufacturing Company (Merdel) filed an answer denying the allegations of Affiliated. In an amended answer, filed August 5, 1970, Merdel stated as an affirmative defense the res judicata effect of a consent judgment, entered March 2, 1967, upon a stipulation filed in the United States District Court for the Western District of Michigan and also the stipulated agreement, itself, between the parties as to the use Merdel could make of the word Carom.

After a bench trial, Judge Tyler, on April 30, 1973, dismissed the claims of Affiliated with the exception of damages for breach of contract by Merdel as to one use of the word Carom. Damages for this breach were to be determined at a later hearing. By letter of May 21, 1973, Affiliated stated that it "prefers an early appeal, and therefore chooses not to proceed at the present time on such a limited issue." Thereafter Judge Tyler entered a final order dismissing all of Affiliated's claims. Affiliated limits its appeal to three general issues: infringement of its trademarks Carroms and Kik-it; infringement of its copyrighted rulebook; and rescission of the 1967 agreement. Affiliated has not pursued its claim for money damages for breach of contract or its unfair competition claim.

1. Trademark Registration No. 49,996. The registration was originally obtained for the mark Carroms in 1906, and the registration was subsequently amended to Carrom. The last renewal was on February 27, 1967.

2. Copyright Registration No. 496,140 in Class AA.

3. Trademark Registration No. 37,800 issued January 23, 1940 and renewed January 23, 1960.

4. The other two defendants, Wm. Richman Associates, Ltd. and Bernard Cahn, who were

We affirm the decision below.

The appellant, Affiliated Hospital Products, Inc. (Affiliated), through its Carrom Division and its predecessors in interest, has been manufacturing and marketing games for children for many years. Carroms, a tabletop pool game, has been marketed by Affiliated since the late 1800's. Involved in this suit is the alleged misuse of the trademark Carrom,[1] owned by Affiliated, and the alleged violation of appellant's copyright of its copyrighted rule book for Carroms.[2] Affiliated also manufactures a tabletop soccer game called Kik-it, the subject of the other trademark involved in the present action.[3] The appellee, Merdel Game Manufacturing Company (Merdel), whose motivating figures are former employees of Affiliated, has been marketing similar games, including the 100 Play Game Board and Kick'er, since 1961.[4] The 100 Play Game Board includes a carom board, as the game's carton makes clear, as well as a rulebook for caroms and related games. Kick'er is, like Kik-it, a tabletop soccer game.

In 1963, Affiliated sued Merdel for, among other things,[5] infringement of its registered trademark Carrom. Trial commenced in late February 1967. After two days of trial the parties negotiated an agreement, dated March 2, 1967, which led to the settlement of the action and its dismissal with prejudice. The agreement provides in relevant part:

The parties hereto, by their respective attorneys, hereby stipulate and agree as follows:

1. The defendants stipulate that plaintiff's trademark registration No. 49,996 is valid and agree not to use the

responsible for marketing Merdel products in the metropolitan New York area, were named as defendants with Merdel in the unfair competition claim. They prevailed below and, on appeal, Affiliated has focused exclusively on its claims against the principal appellee, Merdel.

5. Affiliated sued Merdel not only alleging trademark infringement but also claiming misappropriation of trade secrets, breach of fiduciary duties, and unfair competition.

words *Carrom* or *Carroms* as a trademark. If the words *Carrom* or *Carroms* ceases to be a trademark, there shall be no restriction on the defendants' use thereof.

2. Plaintiff stipulates that it will not object to the use of the word *Carom* or *Caroms* by the defendant where such use is no more prominent than the use on the date of this stipulation. The defendants agree that they will not expand such use for the period of three years from this date. The defendants agree as part of the foregoing that they will not use the word *Carom* or *Caroms* during such three-year period to describe their game board. At the termination of such three-year period there shall be no restriction on the use of the words *Carom* or *Caroms* by the defendants.

. . . . .

It is clear from the record in the Michigan proceedings that the stimulus to settle was the possibility of a judicial decision invalidating Affiliated's trademark.[6] In exchange for Merdel's unrestricted right to use the word Carom after March 2, 1970, Affiliated received valuable present consideration: Merdel's recognition of the trademark's validity, dismissal with prejudice of Merdel's counterclaim, and the stipulated limitation on Merdel's use of the term Carom for a three-year period.

After the 1967 agreement Merdel continued to use the word Carom on its price lists, catalogues, invoices and cartons. In 1969 Merdel changed its carton so that the carton end flaps read "100 Play Game Board (Carom & Crokinole)" which made the word Carom visible when cartons were stacked in retail stores. And, of course, after March 1970 Merdel has, in reliance upon the terms of the stipulation, greatly expanded its use of the word Carom.

■ The 1967 agreement controls the rights of the respective parties in the use of the word Carom; and, preliminary to any claim of trademark infringement, Affiliated must demonstrate conduct by Merdel sufficiently grave to warrant rescission of that agreement. Absent grounds for rescission, Merdel has had since March 2, 1970, the right to use the word Carom, and Affiliated has only the right to compensatory damages for breach of the agreement. It is clear that not every breach of contract will justify rescission, but rather this remedy will be permitted only when, as one court has stated, "the complaining party has suffered breaches of so material and substantial a nature that they affect the very essence of the contract and serve to defeat the object of the parties." Nolan v. Williams Music Co., 300 F.Supp. 1311, 1317 (S.D.N.Y.1969), aff'd sub nom. Nolan v. Sam Fox Publishing Company, Inc., 499 F.2d 1394 (2 Cir. 1974). See, also, In Re Waterson, Berlin & Snyder Co., 48 F.2d 704 (2 Cir. 1931); Corbin on Contracts § 1253 (2d ed. 1964).

■ Affiliated argues that Merdel had used the term Carom prior to 1967 in ways then unknown to Affiliated and that these pre-agreement uses, hidden to Affiliated, emerged after the 1967 agreement and lay outside the fair intendment of the agreement. It claims that this initial ignorance of actual usage misled Affiliated into entering into the stipulated agreement and thus provides grounds for rescission. Judge Tyler found, and we agree, that the parties intended to cover promotional activity centered on the word Carom. It is clear that Affiliated knew, or should have known, that Merdel's use of the word was not solely limited to the carton labeling, the use of which Affiliated now claims it was aware, but rather extended to other, standard, promotional devices.[7] Merdel's use of the word Carom in its catalogues, price lists, and other adver-

---

6. The trial judge in that action intimated strongly that he would hold the mark Carrom invalid.

7. However, Affiliated did not engage in discovery in the Michigan action, which makes it difficult to discern precisely the extent of its knowledge of Merdel's actions.

tising was fairly within the scope of the agreement.

■ In the years prior to the agreement, Merdel variously described its 100 Play Game Board on its customer invoices. The legends "100 Play Game Board," "100 Play Game Board (Carom & Crokinole)," and "100 Play Carom Board" all appear typewritten on invoices during this period. Although not within the scope of promotional activity, and perhaps unknown to Affiliated at the time of entering into the agreement, this usage, which continued after the agreement, appears unexceptionable. The invoices were in response to the placement of orders by customers, who were in turn responding to Merdel's advertising. The invoices therefore were not a source of possible further confusion between the products. Although this use was a use hidden to Affiliated at the time of entering the agreement, the carom description on the invoices represents an insignificant intrusion by Merdel which is insufficient to warrant rescission of the contract on the basis of unilateral mistake in the formation of a contract. See United States Plywood Corp. v. Hudson Lumber Co., 113 F.Supp. 529 (S.D.N.Y. 1953), appeal dismissed, 210 F.2d 462 (2 Cir. 1954); Williston on Contracts §§ 1573, 1578 (3rd ed. 1970). It was not necessary that Affiliated be aware of each specific item of Merdel's use of the word Carom: It was enough that Affiliated knew that Merdel was making considerable use of the word in many phases of its promotional and marketing activities. In this light, it is evident that the invoices provide no ground for rescission of the agreement.

■■ Affiliated also urges that during the three-year period there was a substantial breach of the agreement by Merdel in its use of the word Carom which justifies rescission. During the restricted use period Merdel agreed to abide by three limitations: (1.) there would be no use "more prominent" than the use prior to the date of the agreement; (2.) there would be no expansion of such use; and (3.) "as part of the foregoing" the word Carom would not be used to describe the game board. Judge Tyler found that Merdel's introduction of a new carton whose end flaps stated "100 Play Game Board (Carom & Crokinole)" was an expanded use of the word Carom. Uncertain as to whatever possible harm this expanded use caused Affiliated, the trial judge postponed a determination of the damages for further proof of harm. Our examination of the record indicates Merdel did use the word Carom to describe its game board in some instances of catalogue advertising which, although paralleling earlier pre-agreement use, did violate the terms of the agreement. In view of the valuable considerations Affiliated obtained by the agreement, these advertising breaches are not, we believe, serious enough to warrant a rescission of the agreement. Affiliated was properly limited to a recovery for the damages it could prove it sustained from the breach of the agreement, a remedy which appellant failed to pursue below or on appeal.

In another context, Judge Learned Hand, speaking for this court, stated that rescission, as an equitable remedy:

. . . is a remedy dependent upon balancing the relative interests involved, and in a case where the injured party has another and a complete remedy and where rescission will deprive the wrongdoer of rights which are his in spite of his wrong, a court of equity will not grant rescission. Dabney v. Chase Nat. Bank of City of New York, 201 F.2d 635, 639 (2 Cir. 1953).

Here we conclude that, despite the breaches by Merdel, the relative interests militate against rescission. Affiliated has received its consideration under the agreement which Merdel has in substantial part adhered to. Under the agreement Merdel has had the right, as of March 2, 1970, to the unrestricted use of the word Carom; in reliance of this it has changed its position. For any breaches of the agreement by Merdel from 1967 to 1970 Affiliated had the

right to compensatory damages, a right abandoned below.[8]

 Affiliated's Kik-it and Merdel's Kick'er are similar tabletop games in which wooden figures, manipulated by the players, play a soccer game. Judge Tyler in response to Affiliated's claim of trademark infringement found that the games' names employed the work "kick" in a manner merely descriptive of the games involved.

This is a close question, in one respect because of the similarity, not only of names, but also of the games themselves which compete for the same market. In addition, the word "kick" and its variations not only describe the nature of the game, but also, to a degree, the word is used as a "symbol to attract public attention." Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2 Cir. 1962); see also Venetianaire Corp. of America v. A. & P. Import Co., 429 F.2d 1079 (2 Cir. 1970).[9] However, on balance, we agree with the trial judge that there was no trademark infringement by Merdel. Affiliated cannot claim exclusive rights over every variation of the word "kick." In the game field alone there is a profusion of games whose names, designed to catch the fancy of either children or parents, are derived from the work kick and which involve typically a football or soccer format.[10] Also buttressing our conclusion is the finding of the trial judge that there was substantial proof that there was no actual confusion between the products by the intermediate purchasers. Although the Lanham Act speaks of the "likelihood of confusion," 15 U.S.C. § 1114(1), it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion.

Finally, the trial judge dismissed Affiliated's claim of infringement of its copyrighted rulebook for Carroms and related games. Since the introduction of its 100 Play Game Board in 1961, Merdel has published a similar rulebook, which contains the rules for 100 games. In the preparation of the rulebook, Merdel's employee testified that he had used Affiliated's rulebook and that the changes that had been made were made for clarification. Affiliated at trial presented a thorough textual analysis of the two books in an attempt to demonstrate the frequent instances of identical wording. It is clear, however, from an examination of the two rulebooks that Merdel's copying was not slavish, and that Merdel made a good faith attempt to improve upon, and to clarify, the presentation of the rules.

 The issue that is squarely raised, therefore, is to what extent a copyright holder can prevent a competitor from publishing a similar rulebook to the copyrighted rulebook. No claim is of course made that appellant can protect the game of Caroms or its variations which are in the public domain. The rules of the game are perforce in the public domain as well as the game itself. Affiliated's copyright only protects Affiliated's arrangement of the rules and the manner of their presentation, and not their content. Here, however, the simplicity of the games makes the subject matter extremely narrow, and the distinction between substance and arrangement blurs. On these facts we hold that

---

It is also unnecessary to decide whether Judge Tyler misconstrued res judicata principles in his treatment of the Michigan dismissal with prejudice. In any event, it is nonetheless clear that a consent judgment entered without findings, although entitled to some res judicata effect, has no bearing upon acts between the same parties subsequent to that judgment, or upon acts outside the terms of the settlement. Lawlor v. National Screen Service Corporation, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

**8.** Our disposition of the rescission issue makes it unnecessary to consider the issue of the va-

lidity of the Carrom mark, or the issue of whether a valid mark was infringed.

**9.** For an interesting, but here not dispositive, discussion of the word "kick" and its variations, see Kiki Undies Corporation v. Alexander's Dept. Stores, Inc., 390 F.2d 604 (2 Cir. 1968).

**10.** For example, there are "Kick-In," "Kicker" and "Kick-It" which are soccer games; "Kick-Off" is a football game.

Merdel, although admitting to access and use of Affiliated's work, did not infringe Affiliated's copyright. Merdel did not copy Affiliated's rules verbatim, and indeed its changes enhanced the clarity of the rules. This conclusion, based on the facts here present, in no way affects the general rule, applicable in other situations, that upon a showing of access to copyrighted material, an alleged infringer cannot escape liability for his appropriation through the introduction of slight changes.[11] Orgel v. Clark Boardman Co., 301 F.2d 119 (2 Cir.), cert. denied, 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). We are encouraged in this conclusion through recognition of the fact that a contrary result would prevent publication of the rules of any simple game in the public domain unless the second entrant in the field developed his rules solely through watching the game being played; a result which would afford protection to the game itself.[12]

Affirmed.

---

**11.** For a similar result on the issue of copyrightability of contest rules, see Morrissey v. Proctor & Gamble Co., 379 F.2d 675 (1 Cir. 1967).

**12.** Our disposition of the issue of infringement makes it unnecessary to discuss the alternative grounds appellee advances for dismissal of this claim, i. e., the Statute of Limitations and res judicata.